RIPLEY COUNTY BOARD OF ZONING APPEALS, and Louise White, Marilyn Weil, Art Kimpel, Virgil Woliung, Linda Everage, John E. Brandt, John Manifold, John F. Kash, Marie A. Eisert, Louis Brandt, Sally Parker, Bob Stacey, Glenn E. Reuter, Charles A. Lawburgh, Carlos Dieckmann, Rev. John Mikennas, Jr., and Betty Lawburgh, Appellants–Respondents,

v.

RUMPKE OF INDIANA, INC., Appellee–Petitioner.

No. 69A01–9503–CV–90.

Court of Appeals of Indiana.

March 22, 1996.

Rehearing Denied Aug. 6, 1996.

Douglas C. Wilson, Lynnette M. Fledderman, Wilson Law Offices, Batesville, for Ripley County Board of Zoning Appeals.

Karl L. Mulvaney, Nana Quay–Smith, Bingham Summers Welsh & Spilman, India-

napolis, for Citizens Against Rumpke Expansion.

George M. Plews, Frederick D. Emhardt, Plews Shadley Racher & Braun, Indianapolis, Larry L. Eaton, Eaton & Romweber, Versailles, for Appellee.

## OPINION

BAKER, Judge.

Appellants-respondents Ripley County Board of Zoning Appeals (BZA) and Louise White, Marilyn Weil, Art Kimpel, Virgil Woliung, Linda Everage, John E. Brandt, John Manifold, John F. Kash, Marie A. Eisert, Louis Brandt, Sally Parker, Bob Stacey, Glenn E. Reuter, Charles A. Lawburgh, Carlos Dieckmann, Rev. John Mikennas, Jr. and Betty Lawburgh, or Citizens Against Rumpke Expansion, appeal the judgment of the Ripley Circuit Court reversing a decision of the BZA which denied appellee-petitioner Rumpke of Indiana, Inc.'s application for a special exception to expand its landfill in Ripley County.

### FACTS [1]

Rumpke is a trash disposal company which owns an 18.4 acre landfill in Ripley County, Indiana. The area in which the landfill is located is zoned, pursuant to the Ripley County Area Zoning Code (RCAZC), as an A–2 Agriculture District, which indicates that it is a "good agricultural area where residential subdivisions either have taken place or are anticipated to take place." RCAZC § 80.10. The current landfill operates as a non-conforming use under the zoning laws, as the landfill was in place prior to the passage of the current zoning laws.

On November 23, 1993, Rumpke applied to the Ripley County Area Plan Commission and the BZA for permission to expand the landfill from 18.4 to 69 acres and from 38 to 120 feet in height. Because the RCAZC does not include landfill operations within its

---

1. We note that seven and one-half volumes of the nineteen volume record in this case consist of copies of the notice provided by Rumpke to various persons of its petition for writ of certiorari. We remind the BZA of Ind.Appellate Rule 7.2(B), which states "[n]either party shall request parts of the record or a transcript of the proceedings which are not needed for the issues to be asserted on appeal...." Because Rumpke's provision of notice of its petition for writ of certiorari is not an issue in this appeal, the inclusion of the notices in the record was unnecessary and served only to enlarge an already lengthy record.

A–2 zoning designation, Rumpke was required to seek a special exception pursuant to RCAZC §§ 80.24(E)(41) and 80.10(A)(3) from the BZA. A special exception is a use permitted under a zoning ordinance upon the showing of certain statutory criteria. Under RCAZC § 80.24(B)(1), these criteria include:

(a) the establishment, maintenance, or operation of the special exception will not be detrimental to or endanger the public health, safety, or general welfare;

(b) the special exception will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted, nor substantially diminish and impair property values within the neighborhood;

(c) the establishment of the special exception will not impede the normal and orderly development and improvement of surrounding property for uses permitted in the district;

(d) adequate utilities, access roads, drainage and other necessary facilities have been or are being provided; and

(e) adequate measures have been or will be taken to provide ingress or egress so designed as to minimize traffic congestion in the public streets.

To be successful, an applicant must satisfy all five criteria. RCAZC § 80.24(B).

On January 25, 1994, the BZA held a hearing on Rumpke's application, at which four of the five BZA members were present. Rumpke presented testimony and evidence regarding its proposed expansion, including its plans for lining the bottom and sides of the landfill, collecting and removing leachate,[2] collecting and treating storm water runoff, monitoring ground and surface waters, and covering the landfill. In addition, Rumpke presented testimony regarding its compliance with various regulations and problems which could arise. Rumpke also testified that it intended to create earthen berms and plant trees in an effort to screen the facility, as well as develop a 55 acre Wildlife Management and Enhancement Area to further conceal the landfill. During the hearing, Rumpke explained that its Host Community Agreement with Ripley County required it to guarantee property values for property owners adjacent to the landfill. Then, Rumpke presented the testimony of a real estate appraiser, who opined that property values in the area near the landfill would not be diminished.

In response, numerous individuals from the community (Remonstrators) testified and presented evidence in opposition to the proposed landfill expansion. The Remonstrators' objections, which were in part based upon the USDA Soil Survey contained within Rumpke's application for special exception, included the argument that the soil around the current Ripley County landfill was unsuitable for expansion and would require special treatment to overcome limitations or hazards, as well as arguments concerning leakage problems, prior regulatory violations by Rumpke in its landfill operations, noise problems and diminution in property values. Additionally, the Remonstrators testified regarding the aesthetics of the proposed expansion. Following the presentation of testimony and evidence, the BZA members agreed to continue the hearing on Rumpke's application to the next scheduled meeting in order to have the opportunity to study the evidence presented. During this time period, Rumpke delivered additional information to each BZA member regarding its application and further responses to the arguments of the Remonstrators.

On February 22, 1994, during its next regularly scheduled meeting, the three members of the BZA who were present denied Rumpke's request for a continuance, and thereafter, voted to reject Rumpke's application for a special exception because Rumpke had not met three of the five requirements under RCAZC § 80.24(B)(1). Specifically, the BZA found that Rumpke had satisfied criteria (d) and (e) of the ordinance, but that it had not satisfied criteria (a), (b) or (c). Thereafter, the BZA entered written findings which provided:

---

**2.** Leachate refers to water which has been contaminated because it has filtered through the landfill.

1. The establishment, maintenance, or operation of the special exception will be detrimental to or endanger the public health, safety or general welfare.

2. The special exception will be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted, and will substantially diminish and impair property values within the neighborhood.

3. The establishment of the special exception will impede the normal and orderly development and improvement of surrounding property for uses permitted in the district.

4. Adequate utilities, access roads, drainage and other necessary facilities have been or are being provided.

5. Adequate measures have been or will be taken to provide ingress or egress so designed as to minimize traffic congestion in the public streets.

### DECISION

IT IS THEREFORE the decision of the Ripley County Area Board of Zoning Appeals that the Special Exception for Rumpke of Indiana, Inc. is denied.

Supplemental Record at 1.

On March 24, 1994, Rumpke filed a petition for writ of certiorari with the Ripley County Circuit Court seeking judicial review of the BZA's decision. Rumpke alleged the BZA's decision was not supported by substantial evidence and that the procedures the BZA used to reach its decision were improper. Following an evidentiary hearing, the trial court entered findings of fact and conclusions of law on November 28, 1994, wherein it found: (a) the evidence presented by Rumpke was substantial and probative of the elements required for a special exception while the testimony and evidence of the Remonstrators consisted of worries and matters not relevant to the BZA; (b) the BZA failed to follow the procedures required by IND. CODE § 36-7-4-919 by failing to rule on Rumpke's application during the January 25, 1994, hearing, by deliberating the application privately in violation of the Open Door Law,[3]

by considering improper matters and evidence other than that presented at the public hearing, by failing to make written findings within five days as required by I.C. § 36-7-4-919, and by failing to make adequate findings to support its decision; and (c) Rumpke was denied due process because a BZA member was biased. The trial court entered judgment in favor of Rumpke and ordered the BZA to grant Rumpke's application for a special exception. This appeal, which was brought by the BZA, and later joined by many of the Remonstrators, ensued.

### DISCUSSION AND DECISION

#### I. Procedural Errors

■ As a threshold matter, we must address the BZA's contention that the trial court erred in finding procedural errors in the BZA's denial of Rumpke's application for a special exception. Judicial review of an administrative decision is limited to whether the agency possessed jurisdiction over the subject matter, whether the decision was made pursuant to the proper procedures, whether the decision was arbitrary and capricious, whether the decision was in violation of any constitutional, statutory, or legal principles, and whether the decision was supported by substantial evidence. *Marion Teachers Ass'n v. Board of School Trustees of Marion Community School Corp.*, 643 N.E.2d 370, 372 (Ind.Ct.App.1994). Normally we give deference to an administrative agency's findings and conclusions because an agency is an expert in that area. *Ind. Dept. of Public Welfare v. Crescent Manor, Inc.*, 416 N.E.2d 470, 475 (Ind.Ct.App.1981). However, where, as here, we are reviewing a determination by the trial court that the agency failed to follow the correct procedures in reaching its decision, such deference is inappropriate. Rather, we are required to give deference to the trial court, as the trial court heard evidence and testimony regarding the agency procedures. *See Diesel Const. Co., Inc. v. Cotten*, 634 N.E.2d 1351, 1352 (Ind.Ct.App.1994) (where trial court must make preliminary factual inquiry prior to determining question of law, we must give deference to

---

3. IND.CODE §§ 5-14-1.5-1 to 5-14-1.5-8.

the trial court's decision). Here, the trial court entered findings of fact and conclusions of law regarding the BZA's failure to follow the correct procedures. Because the record does not indicate that either party requested these findings, we view the case as one decided on a general judgment with the support of partial findings, and we will affirm on any theory unless such theory is contrary to the findings of fact. *McClamroch v. McClamroch*, 476 N.E.2d 514, 521 (Ind.Ct.App.1985), *trans. denied*. We will set aside specific findings only if they are clearly erroneous, meaning the record lacks any facts or reasonable inferences supporting them. *Vanderburgh County Board of Comm'rs v. Rittenhouse*, 575 N.E.2d 663, 665–66 (Ind.Ct. App.1991), *trans. denied*. In no case will we reweigh evidence or reassess witness credibility. *Id.*

### A. Continuation of the Hearing

■ First, the BZA contends the trial court erred in its finding that the BZA failed to meet the requirements of I.C. § 36–7–4–919(e) by continuing its hearing on Rumpke's application from the January 25, 1994, meeting at which evidence was presented to the February 22, 1994, meeting. I.C. § 36–7–4–919(e) provides:

> The board shall make a decision on any matter that it is required to hear under the 900 series either:
>
> (1) at the meeting at which that matter is first presented; or
>
> (2) at the conclusion of the hearing on that matter if it is continued.[4]

In response, Rumpke argues that the hearing on its application was not continued, rather, it was completed during the January 25, 1994, meeting, and that the BZA, therefore, was required to rule on its application at that time. Further, Rumpke contends that it was prejudiced by the BZA's decision to delay its vote on Rumpke's application until the next scheduled meeting for several reasons, including that one member who was present during the hearing on January 25, 1994, was

not present during the vote on the application, the delay allowed the BZA members to receive information other than that presented during the hearing, and the delay allowed the BZA members to privately confer, which violated the Open Door Law.[5]

At the conclusion of Rumpke and the Remonstrators' testimony, BZA members commented that they needed additional time to review the evidence presented during the hearing. Record at A139. As a result, the BZA voted to postpone making a decision on Rumpke's application until its next scheduled meeting. We believe that this decision invoked I.C. § 36–7–4–919(e)(2), which provides that the BZA may vote on a matter at the conclusion of a hearing, if the hearing is continued from one meeting to the next, rather than at the meeting at which the hearing begins. Here, the BZA's postponement of the decision for purposes of further study was a continuation, and not a conclusion, of the hearing on Rumpke's application. *See Harbeson v. Town of Lanesville*, 486 N.E.2d 1065, 1069 (Ind.Ct.App.1985) (Board's decision at conclusion of meeting to announce decision during next meeting was a continuation of original hearing). Thus, we find the trial court's determination that the BZA violated I.C. § 36–7–4–919(e) was erroneous.

■ Moreover, Rumpke did not object during the BZA's January 25, 1994, meeting to the BZA's decision to postpone voting on Rumpke's application in order for BZA members to have time to review the information. In fact, Rumpke's attorney stated during the meeting that he appreciated the BZA taking its time in making the decision and that he would not ask them to make their decision that night. R. at A140. Rumpke cannot now be heard to complain of an alleged error which, by acquiescing in the decision, it invited. *Ind. Dept. of Ins. v. Zenith Re-Insurance Co., Ltd.*, 596 N.E.2d 228, 230 (Ind. 1992). Furthermore, we reject Rumpke's arguments that it was prejudiced by the continuation. Although Rumpke is correct that one member of the BZA who heard testimo-

---

4. We note that in the instant case, the BZA held its hearing on Rumpke's application during its regularly scheduled meeting.

5. We address the trial court's finding regarding the violation of the Open Door Law in section I(C).

ny on January 25, 1994, was not present during the vote, the remaining BZA members constituted a valid quorum, and they all voted to deny the application. In addition, Rumpke used the delay occasioned by the continuation of the hearing to provide BZA members with additional information regarding its application and the arguments raised by the Remonstrators. R. at G1–G181. Specifically, Rumpke presented BZA members with a lengthy volume entitled: "Response to [Remonstrators] Memorandum in Opposition to Application by Rumpke of Indiana, Inc. for Special Exception." R. at G1–G181. Additionally, Rumpke placed several full-page advertisements and numerous letters to the editor in a local newspaper during this time. R. at 2204. Thus, we do not find that Rumpke was prejudiced by the BZA's failure to vote on the application for special exception during its January 25, 1994, meeting.

■ Finally, we disagree with Rumpke's assertion that the purpose of I.C. § 36–7–4–919(e) is to prevent BZA members from being influenced by "off-the-record information and opinions." Appellee's Brief at 46. Specifically, Rumpke argues that the BZA members' receipt of information beyond that presented at the hearing, including telephone calls and newspaper editorials, predisposed or perhaps persuaded the BZA members to vote against Rumpke's application. Clearly, Rumpke is correct that the BZA's decision to approve or deny an application should be based on the evidence presented at the hearing. This requirement, however, does not imply that BZA members are to be held to the same degree of detachment as members of the judicial community, who are required, pursuant Cannons 2 and 3 of the Indiana Code of Judicial Conduct, to maintain their impartiality and to refrain from allowing relationships to interfere with their judicial conduct or judgment. On the contrary, while we do not condone zoning boards taking a poll of their neighborhoods, *see Stout v. Mercer,* 160 Ind.App. 454, 463, 312 N.E.2d 515, 520 (1974), boards are not expected to be unaware of the overall sentiment, including legitimately expressed concerns, of other members of the community. This general awareness and concern must not, however, overshadow or outweigh the evidence properly submitted to them in their capacities as board members. Thus, we do not find Rumpke was prejudiced by the BZA members receipt of information beyond that presented at the hearing.

### B. Timeliness of Findings

■ Next, the BZA argues that trial court erred in finding that the BZA failed to enter findings within five days of its ruling as required by I.C. § 36–7–4–919(f) and that Rumpke was prejudiced by this delay. I.C. § 36–7–4–919(f) provides: within five (5) days after making any decision under the 900 series, the board of zoning appeals shall file in the office of the board a copy of its decision.

During the February 22, 1994, meeting, the BZA voted on Rumpke's application. The transcript of that meeting shows that each of the three members present found that Rumpke had failed to demonstrate that it met three of the five criteria to be entitled to a special exception, and articulated which criteria Rumpke had not met. Thereafter, during the next scheduled meeting in March 1994, the BZA members signed a written copy of their findings. While we agree with the trial court's finding that the BZA did not make timely findings as required by I.C. § 36–7–4–919(f), we do not find that this delay denied Rumpke due process. Rumpke has not alleged how it was prejudiced by the BZA's delay in entering written findings of its decision beyond noting a BZA member's inability, eight to ten weeks after the decision was made, to remember the details of the decision-making process. We do not believe this bald allegation demonstrates prejudice, as the BZA informed Rumpke during the vote of the specific criteria which it had not met. Thus, the BZA's delay in entering findings was harmless error. *See Town of Merrillville Board of Zoning Appeals v. Public Storage, Inc.,* 568 N.E.2d 1092, 1093, fn. 2 (Ind.Ct.App.1991).

### C. Open Door Law

■ Next, the trial court found that the BZA violated Indiana's Open Door Law by

privately deliberating Rumpke's application. Specifically, this finding was based on the affidavit of a Rumpke employee who witnessed the three members of the BZA, who attended the February 22, 1994, meeting, privately confer for approximately five minutes before the meeting.

Indiana's Open Door Law provides that all official actions taken by public agencies should be conducted and taken openly. I.C. § 5–14–1.5–1. "Official action" is defined to include receiving information, deliberating, making recommendations, establishing policy, making decisions, or taking final actions. I.C. § 5–14–1.5–2(d). Here, the BZA members testified to the trial court that they arrived for the hearing approximately five minutes early and that they had a discussion, but that the discussion did not concern Rumpke's application for special exception. BZA member Linda Krinop stated that they commented on the presence of the police, the weather, and whether they would vote individually or as a group. R. at 2224.32–2224.33. Additionally, she testified that she informed the other two members that she had received a telephone call regarding Rumpke's application, but did not discuss the contents of the telephone call with them. Similarly, BZA member Charles Rohlfing testified that he asked where to sit, was informed that another BZA member was not coming, and commented on the size of the crowd and the presence of the Sheriff's Department. R. at 2175–78. Finally, BZA member David Nuhring testified that he greeted the other BZA members and made small talk, and that he might have commented on the presence of the Sheriff's Department. R. at 2316. None of these conversations constituted an official action, and no evidence was placed before the trial court to contradict this testimony. Although our standard of review requires us to give defer-

ence to the findings of the trial court, here, Rumpke presented no evidence of an Open Door Law violation. On the contrary, Rumpke's sole evidence consisted of the affidavit of its employee, who did not in fact hear the content of the BZA members' conversation. R. at 1824.[6] Because the record lacks any facts or reasonable inferences to support the trial court's findings, the trial court's conclusion is erroneous. Thus, we hold that the trial court erred in finding that the BZA violated the Open Door Law.

## II. Evidence

Next, the BZA contends the trial court erred in its determination that the BZA's findings were inadequate and, additionally, that the BZA's decision was not supported by the evidence. Thus, the BZA argues, the trial court erred in reversing its decision and ordering it to grant Rumpke's application for a special exception.

In the instant case, the BZA determined that Rumpke had failed to show that it met three of the five criteria necessary to be entitled to a special exception. Specifically, Rumpke failed to show:

(a) the establishment, maintenance, or operation of the special exception will not be detrimental to or endanger the public health, safety, or general welfare;

(b) the special exception will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted, nor substantially diminish and impair property values within the neighborhood;

(c) the establishment of the special exception will not impede the normal and orderly development and improvement of surrounding property for uses permitted in the district;

**6.** We reject Rumpke's insinuation that the evidence shows the BZA members must have discussed their decision prior to the meeting. Specifically, Rumpke points to: 1) Krinop's testimony that she received a telephone call from an unidentified individual who informed her that the Jefferson Proving Grounds was a better alternative for a landfill and 2) following the BZA vote, BZA member David Nuhring commented that the community should cooperate with Rumpke to find a site for the landfill and

that Jefferson Proving Grounds was a possibility. We refuse to accept that these contentions show that the BZA members discussed their decision prior to the meeting. First, Krinop specifically stated that she did not mention the contents of the telephone call to the other BZA members. Second, Nuhring's comments regarding the Jefferson Proving Grounds were made following the Remonstrators' suggestions at the January 25, 1994, hearing that it was a possible site for the landfill.

R. at A150–53. On appeal, the trial court found that the BZA failed to make adequate findings to support its decision, but, that the inadequacy was moot because while Rumpke presented substantial and probative evidence on all of the necessary criteria, the Remonstrators' evidence consisted of worries and matters not relevant to a BZA. R. at 1972.[7] In other words, the trial court found that regardless of whether the BZA had the opportunity to correct its findings, the BZA's decision would not be supported by substantial evidence because the Remonstrators presented no evidence in opposition to Rumpke's application. As a result, rather than remand for the BZA to correct its findings, the trial court reversed the decision of the BZA and ordered it to grant Rumpke's application for a special exception.

First, we address the trial court's conclusion that the BZA's findings were inadequate. A Board of Zoning Appeals has a duty to make findings of fact in support of its decision. *Porter Co. Bd. of Zon. App. v. Bolde*, 530 N.E.2d 1212, 1215 (Ind.Ct.App. 1988). We have held that this duty includes a requirement that a BZA enter both specific findings of fact and ultimate findings, or determinations. *Town of Merrillville*, 568 N.E.2d at 1095. Determinations are the conclusions that a petitioner has or has not met the given statutory criteria. *Id.* The specific findings represent the supporting basic facts upon which the determinations are based. *Id.* Here, although the BZA initially argued that its findings were adequate, it now concedes that its findings were merely conclusory and were not adequate to afford judicial review.[8] Thus, we need not address whether the BZA's findings, as they were entered, were sufficient. We note, however, the difficulty a board of zoning appeals faces when attempting to support its determination that particular criteria have not been met. As in the instant case, an applicant generally has a burden when seeking a special exception to prove the existence of certain factors or criteria. If a board of zoning appeals determines the criteria have not been satisfied, it has the discretion to deny the exception. To require that the board then explain why the criteria have not been met in effect either places a burden on those who are opposed to the special exception to come forward with evidence in opposition, or requires the board to set forth requirements for meeting each of the criteria. Neither option is appropriate, as each removes the burden from the applicant to put forth affirmative evidence on each criteria. However, in light of the BZA's concession, we need not address this conflict here.

Generally, once the BZA concedes it failed to make adequate findings, our inquiry would end and we would remand to the BZA for it to correct its findings. Here, however, the trial court opted to reverse the BZA rather than remand for more specific findings because it found that remand would be futile because the evidence presented to the BZA could not substantially support its determination that three of the five criteria had not been met. In fact, the trial court found that no evidence was presented to the BZA to support such a conclusion. Therefore, to determine whether the trial court correctly

---

7. In its conclusions of law, the trial court stated in part:

The remonstrators failed to present expert testimony to counter the expert testimony presented by Rumpke. Nothing in the evidence presented amounted to substantial evidence that the proposed use would be detrimental to the health, safety, or general welfare. Nothing in the evidence presented amounted to substantial evidence that the proposed use would be injurious to use and enjoyment of other property in the immediate vicinity or would substantially diminish property values within the neighborhood. Nothing in the evidence presented demonstrated that the proposed use would impede the normal and orderly development of the neighborhood.

R. at 1972. These findings erroneously place the burden on the Remonstrators to counter evidence presented by an applicant for a special exception. It is the responsibility of an applicant to affirmatively prove that he has satisfied each of the necessary criteria. A BZA, in reviewing an applicant's evidence, has the authority to deny a special exception because the criteria are not met, even in the absence of evidence presented in opposition. *See Town of Merrillville*, 568 N.E.2d at 1095, fn. 4. Thus, the trial court's focus on the merit of the evidence presented by the Remonstrators was misplaced.

8. This concession was made in oral argument held in Indianapolis, Indiana, on February 27, 1996.

found that remand to the BZA was inappropriate, we must now consider whether any evidence was presented to the BZA to support its findings.

 In reviewing the decision of a zoning board, we are bound by the same standard of review as the trial court. *Hendricks County Bd. v. Barlow*, 656 N.E.2d 481, 483 (Ind.Ct.App.1995). A court reviewing a decision of an administrative agency is limited to determining whether the agency's decision was based upon substantial evidence. *Indiana Dep't of Natural Resources v. United Refuse Co.*, 615 N.E.2d 100, 103 (Ind.1993). The trial proceeding is not intended to be a trial de novo, but rather the court simply analyzes the record as a whole to determine whether the administrative findings are supported by substantial evidence. *Id.* Courts that review administrative determinations, at both the trial and appellate level, are prohibited from reweighing the evidence or judging the credibility of witnesses and must accept the facts as found by the administrative body. *Peabody Coal Co. v. Indiana Dep't of Natural Resources*, 629 N.E.2d 925, 928 (Ind.Ct.App.1994).[9]

 During the hearing before the BZA, Rumpke presented its 200–page application for a special exception, which included the specifics of its proposal to expand the landfill. Rumpke proposed to implement "impermeable composite liner and cap systems, leachate collection and removal systems, storm water runoff collection and treatment systems, and groundwater and surface water monitoring systems." Appellee's Brief at 3. The landfill was to be covered with a geotextile liner. Rumpke also pledged that it would not discharge any pollutant in a concentration which would be harmful to human health or the environment, that it would control dust, that it would not produce erosion or pollutants which would be detrimental to adjacent properties, and that it would monitor storm water in compliance with the Federal Clean Water Act. In addition, Rumpke presented testimony and evidence during the hearing to supplement its application. Specifically, Rumpke engineers testified regarding the protective measures to be taken at the site regarding ground water monitoring and erosion control, as well as soil conditions.

In response, several Remonstrators testified in opposition to Rumpke's application. The Remonstrators pointed to the USDA Soil Survey contained in Rumpke's application for special exception, which showed that the soil in the expansion area was unsuitable and could lead to problems such as soil erosion. They presented evidence of leakage problems inherent to all sanitary landfills, including those constructed, as Rumpke proposed, pursuant to new federal requirements. Further, the Remonstrators presented evidence regarding the emission of toxic gases which is common to all landfills. An engineer testified that Rumpke's proposal for handling these problems was deficient, in that it did not contain the level of detail necessary for the BZA to fully understand and respond to the project. R. at A55–60. Finally, the Remonstrators testified about citations Rumpke had received from the Indiana Department of Environmental Management for prior regulatory violations, as well as problems landowners living near the current Ripley County landfill had encountered, including sanitation, lack of cover, grading problems, blowing litter, mud on county roads, erosion, dust, flies and odor. R. at A65, A75, A82.[10]

9. We note that some courts have applied a different standard of review which includes more deference to the trial court's findings when the trial court has first reviewed a decision of an administrative agency. *See Town of Merrillville*, 568 N.E.2d at 1094–95; *Porter Co. Bd. of Zon. App.*, 530 N.E.2d at 1215. However, in doing so, these courts have ignored our basic standard, which requires that we stand in the same shoes as the trial court when reviewing the decision of an administrative agency. As we stated above, deference to the trial court is appropriate only when we review the court's findings or judgment regarding such matters as procedural irregularities in the agency's actions.

10. We do not agree with Rumpke's suggestion throughout its brief that because a landfill is a permitted use within an area zoned as an A–2 agricultural district, problems commonly associated with landfills such as gas emissions and leakage are not of probative value. Further, we disagree with Rumpke's assertion that the BZA should not consider previous violations by an applicant because of the availability to residents of various enforcement actions. These matters

ber participates in a decision, the decision

209

Our holding that evidence was presented to support the BZA's decision regarding the first criteria makes it unnecessary to consider whether evidence was presented to support the BZA's findings on the remaining criteria, as this holding necessitates that we find the trial court erred in reversing the BZA's decision rather than remanding to the BZA for more specific findings.[11] As a result, we must reverse the trial court and remand with instructions for the trial court to remand to the BZA for more specific findings.[12]

### III. Bias

Finally, we consider the trial court's remaining finding that Rumpke was denied due process of law because of BZA member Nuhring's bias in the proceedings due to his prior experience with the Rumpke-owned Batesville landfill. Due process in administrative hearings requires that all hearings be conducted before an impartial body. *New Trend Beauty Sch. v. Beauty Cult. Exam.*, 518 N.E.2d 1101, 1104–05 (Ind. Ct.App.1988). This requirement means that agency members may not be swayed in their decisions by preconceived biases and prejudices. *Id.* at 1105. We presume, however, that administrative agencies will act properly with or without recusal of allegedly biased members. *Id.* When a biased board member participates in a decision, the decision will be vacated. *Couch v. Hamilton County, Bd. of Zoning Appeals*, 609 N.E.2d 39, 42 (Ind.Ct.App.1993). In the absence of a demonstration of actual bias, however, we will not interfere with the administrative process. *New Trend*, 518 N.E.2d at 1105.

Here, we are reviewing a decision by the trial court that a member of the BZA was biased. Because the determination of whether Rumpke was denied due process as a result of a BZA member's bias is a procedural question, we must defer to the trial court's factual determinations. Thus, as we stated above, our standard of review is limited to determining whether the trial court's findings are clearly erroneous, and we must affirm on any theory supported by the judgment. *McClamroch*, 476 N.E.2d at 521.

In the instant case, the trial court found that Nuhring was biased because of his past dealings with Rumpke's Batesville landfill. Specifically, the court found that Nuhring owns property less than a quarter of a mile from the Batesville landfill, and that on numerous occasions Nuhring had complained about the landfill operations. Additionally, the court found that Nuhring had led an effort to enforce a 300 foot setback against Rumpke in Batesville. Finally, the trial

are exactly what a BZA should consider in deciding whether an applicant is entitled to a special exception, and their probative value is not diminished by the fact that the problems are common to landfills.

11. Nonetheless, we note that evidence was presented at the hearing to support the BZA's determination that Rumpke had failed to satisfy two of the remaining five criteria. The BZA found that Rumpke had not proven that the proposed expansion would not be injurious to the use and enjoyment of other property in the immediate vicinity nor diminish property values in the area or that it would not impede the normal and orderly development and improvement of surrounding property. During the hearing, Rumpke presented evidence that the landfill's expansion would not impact property values in the area, and that its Host Community Agreement would guarantee property values to adjacent property owners. In response, the Remonstrators presented the testimony of an appraiser who had experience in determining the impact of a landfill on property values. Specifically, he recounted an experience in which property adjacent to a landfill was worth 30% less than his appraised value had it not been adjacent to a landfill. R. at A96. Further, the Remonstrators presented testimony in opposition to the Host Community Agreement, which only guarantees the sale price of homes adjacent to the landfill, but not homes in the vicinity of the landfill. Additionally, the Remonstrators argued that the Agreement only guaranteed the sale price of adjacent homes, and not homes for which a purchaser could not be found. Thus, the trial court erred in determining that no evidence was presented to the BZA on these criteria.

12. Our determination that the trial court erred in reversing, rather than remanding, the BZA's decision also makes it unnecessary to address the trial court's finding that the BZA considered improper matters in denying Rumpke's application for a special exception, as the trial court's finding was based upon speculation as to what matters the BZA considered. On remand, the BZA will have the opportunity to specify the basis for its decision regarding each criteria making such speculation unnecessary.

court noted several comments Nuhring allegedly made against Rumpke, including that if he could run Rumpke out of Ripley County he would.

 On the basis of this evidence and our deferential standard, we cannot say the trial court's determination that Nuhring was biased in the proceedings was clearly erroneous.[13] Normally, this holding would require us to remand to the trial court with instructions for it to remand to the BZA for another administrative hearing without the participation of Nuhring. Here, however, the evidence presented to the trial court reveals that Rumpke was aware of Nuhring's prior experience with its Batesville landfill and his alleged threats to keep Rumpke's landfill out of Ripley County prior to the BZA's hearing on Rumpke's application. Rumpke, however, did not request Nuhring to remove himself from the hearing or decision-making process. Thus, Rumpke has waived any error in Nuhring's participation in the BZA hearing and his vote on Rumpke's application. *See Highshew v. Kushto*, 126 Ind.App. 584, 592, 131 N.E.2d 652, 655 (1956), *trans. denied*, 235 Ind. 505, 134 N.E.2d 555 (1956). As a result, we will not overturn the BZA's decision.

Nonetheless, we have already determined that this case is to be remanded to the BZA for the entry of more specific findings in support of its denial of Rumpke's application for special exception. Therefore, in order to avoid future due process problems, we must order Nuhring not to participate in the formulation of those findings. BZA member Roger Castner, however, who was present at the January 25, 1994, meeting during which the evidence regarding Rumpke's application was presented but who was not present during the subsequent vote, may participate in the development of the BZA's findings.

### IV. Conclusion

In conclusion, we find that the trial court's judgment ordering the BZA to grant Rump-

ke's application for a special exception was erroneous because there was evidence before the BZA upon which its decision to deny the special exception could have been based. However, because the BZA concedes that its findings were not adequate, we reverse the trial court and remand with instructions for it to remand to the BZA for the entry of more specific findings. Furthermore, we find that the trial court did not err in its determination that BZA member Nuhring was biased in the proceedings. Thus, we hold Nuhring should not participate in the BZA's entry of findings.

Judgment reversed and remanded for proceedings not inconsistent with this opinion.

HOFFMAN and SULLIVAN, JJ., concur.

---

**13.** We note, however, that in light of Nuhring's testimony that his contacts with the Batesville landfill ceased several years prior to Rumpke's application to expand its Ripley County landfill and the testimony of each BZA member, including Nuhring, that the decision to deny Rumpke's application was not based on any improper considerations, had the trial court found that Nuhring was not biased, we similarly would not have found its decision to be clearly erroneous.