BOEHM, Justice,
dissenting.
I respectfully dissent. The majority concludes that a waste transfer facility is a “motor truck terminal” requiring no special exception under the applicable zoning ordinance. To reach this conclusion the majority parses various provisions of the governing ordinance and cites a number of rules of statutory construction, but in my view fails to deal with those that are central to this case.
It seems to me that if we asked a group of average citizens whether a waste transfer station was a motor truck terminal, we would get at best a tie for the position the majority reaches. I acknowledge that the proposed “waste transfer station” meets the technical definition of “motor truck terminal” because it involves the parking, storing, and servicing of trucks. But the activities of a waste transfer station go beyond that definition. Most people would regard garbage as different for purposes of land use regulation from consumer or industrial products on their way to customers. So as a matter of ordinary English, I find the majority’s reading of the ordinance quite strained. But there are also several legal points that the majority does not address.
First, the construction of an ordinance, like construction of a statute, presents a question of law. Story Bed & Breakfast, LLP v. Brown County Area Plan Comm’n, 819 N.E.2d 55, 65 (Ind.2004) (citation omitted). But one rule of law is that in construing an ambiguous ordinance we ordinarily give deference to the interpretation advanced by the administrative agency charged with its enforcement. See St. Charles Tower, Inc. v. Bd. of Zoning Appeals of Evansville-Vanderburgh County, 873 N.E.2d 598, 603 (Ind.2007) (“The ‘interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless [the] interpretation would be inconsistent with the statute itself.’” (quoting LTV Steel Co. v. Griffin, 730 N.E.2d 1251, 1257 (Ind.2000))). For the reasons already given I would find the need for a special exception without resort to any rules of construction. Indeed, the parties were apparently operating on this assumption. The issue was not raised be *313 fore the BZA, and the trial court sua sponte first raised the possibility that a special exception was unnecessary. But here the City and the BZA argue to this Court that a waste transfer facility is not a “motor truck terminal” as that term appears in the ordinance.
And if that were not enough to defer to the agency’s interpretation, the ordinance helps us in this respect. It defines a “motor truck terminal” as a facility “in which trucks ... are parked, stored, or serviced, including the transfer, loading or unloading of goods.” If we dissect this as the majority does, by treating each word and phrase independently of its context, we find that no special exception is required for any facility “in which trucks ... are parked,” which is virtually every imaginable business. Surely no zoning ordinance would contemplate such a loophole, one literally big enough to drive a truck through.
Because I conclude that a special exception is necessary for a waste transfer station, I briefly turn to the issues not reached by the majority: whether the BZA’s denial of a special exception was supported by sufficient evidence, and whether the BZA denied 600 Land its right to due process of law at the hearing.
When reviewing a decision of a zoning board, appellate courts are limited to determining whether the BZA’s decision was based on substantial evidence. Crooked Creek Conservation & Gun Club, Inc. v. Hamilton County N. Bd. of Zoning Appeals, 677 N.E.2d 544, 547 (Ind.Ct.App.1997) (citing Ripley County Bd. of Zoning Appeals v. Rumpke of Ind., 663 N.E.2d 198, 208 (Ind.Ct.App.1996)). In denying 600 Land’s request for a special exception, the BZA made three findings.
1.The grant will be injurious to the public health, safety, convenience, and general welfare of the community because the proposed facility for the transfer and recycling of waste would establish a heavy industrial use with the resulting odors and increased heavy truck traffic upon a site abutting retail commercial businesses, light industrial businesses, and a dwelling.
2. The grant will injure or adversely affect the adjacent area or property values therein because solid waste transfer and recycling operations would introduce significant odor, as well as heavy truck traffic to the immediate area, which has developed in a light industrial or retail manner or is being used as a dwelling.
3. The grant will not be in • harmony with the character of the district and land uses authorized therein because the adjoining properties, as well as the surrounding area, while zoned for heavy industrial use, have developed in a light industrial or retain commercial manner, or ate used res-identially.
Pursuant to IZO section 2.12(C)(2), any one of these findings, if properly supported, would justify the denial of 600 Land’s request. I consider the concerns about potential odor and traffic to have questionable support in the record. But I would uphold the BZA on the basis of the third finding — that the waste transfer station would not be in harmony with the character of the district. The record establishes numerous uses of properties in the area, including a bus link, petroleum storage towers, an ammunition manufacturer, a race team, a collision center, a Dow Chemical plant, a day care, a hotel, a Wendy’s restaurant, several corporate offices, and a $50 million “upscale lifestyle center” including a movie theater, office buildings, retail stores, and a grocery *314 store. At the BZA hearing, County Councilor Ike Randolph testified that the area was changing: “[W]hen that site was zoned industrial, you know, many years ago, long before I was in the area, Pike was different. Pike was more rural, it wasn’t as dense. Things are different now.” In my view, this evidence permits the conclusion that a waste transfer station would not be in harmony with the area’s current character.
Finally, 600 Land argues that its due process rights were violated because one BZA member prejudged and failed to understand the petition. At the public hearing, after the presentations of 600 Land and the remonstrators, but before 600 Land’s rebuttal, BZA Member Aleñe Crenshaw stated, “I don’t have any questions, but I wholeheartedly agree with [Councilor Randolph’s opposition to the special exception]. You know you need— they might need the landfill somewhere, but Pike is upcoming community, and we don’t need it out there. Thank you.” In rebuttal, 600 Land’s attorney addressed any misunderstanding by stating, “Let me point out to you again this is not a landfill, this is a transfer station.” It is commonplace in judicial oral argument for a judge to express a view as to an issue in the middle of a presentation. This is part of a decision-making process, not evidence of bias amounting to a denial of due process. In any event, at no time did 600 Land object to Member Crenshaw’s participation in the hearing or decision. 600 Land therefore waived any claim that its rights were violated. Rumpke, 663 N.E.2d at 210.
I would affirm the trial court’s judgment.
DICKSON, J., concurs.