# FOR PUBLICATION



**FILED**

Jun 25 2013, 6:07 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**MARK A. BATES**
Schererville, Indiana

ATTORNEYS FOR APPELLEES:

**JAN M. CARROLL**
**EDWARD M. SMID**
Barnes & Thornburg, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

GERRY SCHEUB, in his official capacity as a )
Member of the Lake County Drainage Board and )
the LAKE COUNTY DRAINAGE BOARD, )
                                       )
     Appellants-Defendants, )
                                        )
          vs. )     No. 37A03-1210-PL-453
                                        )
VAN KALKER FAMILY LIMITED )
PARTNERSHIP, LAKE COUNTY TRUST )
COMPANY as TRUSTEE OF TRUST NO. 5240 )
And SINGLETON STONE, LLC, )
                                        )
     Appellees-Plaintiffs. )

APPEAL FROM THE JASPER CIRCUIT COURT
The Honorable Rex W. Kepner, Special Judge
Cause No. 37C01-1105-PL-389

**June 25, 2013**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellants-Defendants, Gerry Scheub, in his official capacity as a Member of the Lake County Drainage Board (Scheub), and the Lake County Drainage Board (Drainage Board) (collectively, the Appellants), appeal the trial court's declaratory judgment in favor of Appellees-Plaintiffs, Van Kalker Family Limited Partnership, Lake County Trust Company as Trustee of Trust No. 5240, and Singleton Stone, LLC (collectively, Singleton).

We affirm.

## ISSUE

The Appellants raise one issue on appeal, which we restate as follows:  Whether the trial properly denied the Appellants' motion to dismiss for lack of subject matter jurisdiction.

## FACTS AND PROCEDURAL HISTORY

In January 2010, Singleton filed an Application for zone change with the Lake County Plan Commission (Plan Commission) to rezone 600 acres in an unincorporated area of Lake County to construct and operate a stone quarry.  Scheub, who was the chairman of the Drainage Board as well as a member of the Plan Commission, was a vocal opponent of Singleton's petition.  As a member of the Plan Commission, Scheub organized the opposition to the petition and was successful in persuading the Plan Commission to issue an unfavorable recommendation to Singleton's project.  Scheub also organized the remonstrators opposed to the zoning change and spoke as their

2

representative during the public hearing before the Lake County Council. However, the Lake County Council approved Singleton's request for a zoning change. Despite the Lake County Council's approval, Singleton still required a permit from the Drainage Board, on which Scheub sat as chairman of the three-member board. While the rezoning proceedings were pending, Singleton applied for the drainage permit.

Because of Scheub's public advocacy against the petition for rezoning, Singleton contacted the legal counsel for the Lake County Board of Commissioners and the Drainage Board, requesting Scheub's recusal on the drainage permit. Legal counsel advised that Scheub declined. On February 9, 2011, Singleton filed a complaint, seeking a declaratory judgment that Scheub's participation in or attempts to influence the Drainage Board's consideration of Singleton's permit application would deprive Singleton of due process and should be enjoined. On March 14, 2011, Appellants replied. Thereafter, on May 5, 2011, the action was venued to Jasper County on Appellants' motion.

On July 20, 2011, Singleton filed a motion to compel discovery. The trial court issued an order granting the motion. On December 1, 2011, when Appellants failed to comply with the trial court's order compelling discovery, Singleton filed a motion for sanctions requesting the entry of a default judgment against Appellants as well as an award of attorney fees. On February 7, 2012, while Singleton's motion was pending in the Jasper Circuit Court, Appellants filed Scheub's recusal from the Drainage Board with

the Lake Circuit Court.[1]  Two days later, on February 9, 2012, the Jasper Circuit Court conducted a status conference during which the trial court decided to keep the issue of Scheub's recusal under advisement until the parties advised the trial court of a resolution or until transfer to Jasper County could be obtained.  On February 13, 2012, Appellants filed a rescission of Scheub's recusal in the Lake Circuit Court.

On February 20, 2012, Appellants filed a motion to dismiss alleging that the action was not justiciable for lack of subject matter jurisdiction.  On March 14, 2012, the parties appeared for a scheduled hearing on Appellants' motion to dismiss.  Instead of arguing the motion, the parties entered into a settlement conference in the trial court's chambers.  At that time, Appellants offered that Scheub would recuse himself from the Drainage Board when considering the permit for Singleton's quarry project as long as the stipulation of judgment would be filed after the May 8, 2012 primary election in which Scheub was seeking a re-nomination as Lake County Commissioner.  Singleton accepted those terms and the parties subsequently agreed that Scheub would be replaced on the Drainage Board by Richard McDevitt (McDevitt).  On May 14, 2012, a week after Scheub was successful in the primary election, Scheub's counsel announced that there was "no deal" because Scheub had "changed his mind."  (Appellee's App. p. 125).

On May 29, 2012, Singleton filed a motion to enforce the settlement agreement.  On September 25, 2012, the trial court conducted a hearing on Appellants' motion to dismiss and Singleton's motion to enforce the agreement.  Thereafter, on October 1,

---

[1] That same day, February 7, 2012, the Lake Circuit Court accepted Scheub's recusal and appointed his replacement pursuant to Ind. Code § 36-9-27-6(b).

4

2012, the trial court entered its Order, denying Appellants' motion to dismiss and agreeing that the parties had entered into an enforceable settlement which applied to Scheub in his official capacity only. The trial court appointed McDevitt as Scheub's replacement on the Drainage Board as to all matters related to the Singleton quarry project. The trial court did not enter any findings with respect to its denial of the motion to dismiss.

The Appellants now appeal. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

The Appellants contend that the trial court lacked subject matter jurisdiction to decide Singleton's cause of action and therefore the trial court erred when it denied their motion to dismiss. The applicable standard of review for Trial Rule 12(B)(1) motions to dismiss for lack of subject matter jurisdiction is a function of what occurred in the trial court. *GKN Co. v. Magness*, 744 N.E.2d 397, 401 (Ind. 2001). That is, the standard of review is dependent upon: (i) whether the trial court resolved disputed facts; and (ii) if the trial court resolved disputed facts, whether it conducted an evidentiary hearing or ruled on a paper record. *Id*. If the facts before the trial court are not in dispute, then the question of subject matter jurisdiction is purely one of law. *Id*. Under those circumstances no deference is afforded the trial court's conclusion because appellate courts independently, and without the slightest deference to the trial court determination, evaluate those issues they deem to be questions of law. *Id*.

If, however, the parties dispute the facts presented to the trial court, then our standard of review focuses on whether the trial court conducted an evidentiary hearing.

5

*Id.* Under those circumstances, the court engages in its fact-finding function, often evaluating the character and credibility of witnesses. *Id.* Accordingly, when a trial court conducts an evidentiary hearing, we give deference to its factual findings and judgment, and we will reverse only if the findings and judgment are clearly erroneous. *Id.*

However, where the facts are in dispute but the trial court rules on a paper record without conducting an evidentiary hearing, then no deference is afforded the trial court's factual findings or judgment. *Id.* And where, as in this case, the facts are in dispute and the trial court conducts a hearing where no evidence was presented with respect to that motion (only arguments by counsel) and the trial court made no findings of fact, the reviewing court is in as good a position as the trial court to determine whether the court has subject matter jurisdiction. *Id.* We thus review *de novo* the trial court's ruling in this case.

In support of their claim that the trial court lacked subject matter jurisdiction, Appellants contend that because Singleton failed to exhaust its administrative remedies before the Drainage Board and instead filed a declaratory action before the trial court, the trial court did not acquire jurisdiction to rule on Singleton's cause. In response, Singleton raises three allegations. First, Singleton focuses on the enforceability of the settlement agreement—the final motion Singleton filed before the trial court. As such, Singleton maintains that "the trial court unquestionably had subject-matter jurisdiction to enforce the [s]ettlement [a]greement, regardless of any challenge to its jurisdiction to decide the underlying claims" as this case is governed by contract law. (Appellee's Br. p. 10). Second, Singleton alleges that because Appellants admitted at least three times that the

trial court had subject matter jurisdiction to decide the declaratory judgment complaint, they should now be judicially estopped from asserting a position that is inconsistent with their admissions. And third, Singleton claims that he was not required to exhaust the administrative remedies before the Drainage Board because its complaint did not seek judicial review of any order or determination of the Drainage Board. Because the trial court's order is silent as to its reason for denying Appellants' motion to dismiss, we will address each assertion in turn.

## I. *Settlement Agreement*

It is well established that subject matter jurisdiction is the power of a court to hear and decide the general class of actions to which a particular case belongs. *Parkview Hosp. Inc. v. Geico General Ins. Co.*, 977 N.E.2d 369, 371 (Ind. Ct. App. 2012), *trans. denied*. When a court lacks subject matter jurisdiction, its actions are void *ab initio* and have no effect whatsoever. *Id.* In characterizing the instant dispute as nothing more than the enforceability of a "garden variety contract," Singleton now asserts that Indiana courts have subject matter jurisdiction to enforce contracts, even though dispositive motions are pending. (Appellee's Br. p. 11). Disputing Singleton's categorization, Appellants assert that this is not a contract dispute but an attempt to have Scheub removed as a member of the Drainage Board.

We agree with Appellants that the origin of this cause is not a contract dispute but rather a request for declaratory judgment instigated by Singleton. In determining whether a court has acquired subject matter jurisdiction, we do not evaluate every single filing within a specific course of action. Regardless of subsequent motions in a case, a trial

7

court cannot proceed unless the complaint was properly before it, otherwise any action taken will be void. In other words, subject matter cannot be conferred by the content of a subsequent motion when no subject matter existed in the first place. As such, Singleton's focus on the enforceability of the settlement agreement as a vehicle to convey subject matter jurisdiction is misplaced. Rather, because it is clear that the settlement agreement derived as a result of Singleton's request for a declaratory judgment and was filed in the same proceeding, we need to analyze whether Singleton's initial request for a declaratory judgment fell within the province of the trial court's subject matter jurisdiction.

## II. *Admissions*

Next, Singleton claims that "Appellants admitted the trial court had subject matter jurisdiction *at least* three times." (Appellee's Br. p. 29). Because Appellants played fast and loose with the trial court by first conceding that the court had jurisdiction and then turned around and disavowed it, Singleton maintains that Appellants should be estopped from raising the argument now.

An Indiana court obtains subject matter jurisdiction only through the Constitution or a statute. *Parkview Hosp. Inc.*, 977 N.E.2d at 372. Subject matter jurisdiction cannot be waived or conferred by agreement and can be raised at any time by the parties or the court, including on appeal. *Weldon v. Universal Reagents, Inc.*, 714 N.E.2d 1104, 1107 (Ind. Ct. App. 1999). In *Carpenter v. State*, 360 N.E.2d 839, 842 (Ind. 1977), a case where the parties agreed to a change of venue to a trial court which was lacking jurisdiction in criminal matters, the supreme court held that the appellant could not be

8

estopped from raising the lack of jurisdiction over the subject matter even if appellant or his counsel were guilty of fraud or bad faith.

Thus, regardless of Appellants' conduct and admissions, Appellants cannot be estopped from raising a challenge to the trial court's subject matter jurisdiction.

### III. *Exhaustion of Administrative Remedies*

Appellants' main argument focuses on the requirement that parties before an administrative tribunal are required to exhaust their administrative remedies prior to requesting judicial intervention by the trial court. Specifically, Appellants allege that because Singleton's application for a drainage permit is still pending before the Drainage Board, the trial court had no jurisdiction to grant relief. In response, Singleton contends that it was not required to exhaust administrative remedies because it did not seek judicial review of any order of the Drainage Board; rather, its declaratory judgment action existed independently from any decision the Drainage Board could make as it presented a pure question of law. Moreover, Singleton maintains that prior exhaustion of administrative remedies would be futile as the Drainage Board is refusing to grant Singleton the relief it requested, *i.e.,* Scheub's recusal due to bias.

Where a party is required by the Administrative Orders and Procedures Act to exhaust the administrative remedies before an agency prior to obtaining judicial review of the agency action and fails to do so, courts have no subject matter jurisdiction until after the entry of the final determination by the relevant administrative agency. *Austin Lakes Joint Venture v. Avon Util. Inc*., 648 N.E.2d 641, 644 (Ind. 1995). Even when neither statute nor agency rule specifically mandates exhaustion as a prerequisite to judicial

9

review, the general rule is that a party is not entitled to judicial relief for an alleged or threatened injury until the prescribed administrative remedy has been exhausted. *Id.* Where an administrative remedy is available, filing a declaratory judgment action is not a suitable alternative. *Carter v. Nugent Sand Co.*, 925 N.E.2d 356, 360 (Ind. 2010).

The exhaustion doctrine is supported by strong policy reasons and considerations of judicial economy. *Johnson v. Celebration Fireworks*, 829 N.E.2d 979, 982 (Ind. 2005). Specifically,

> [t]he exhaustion doctrine is intended to defer judicial review until controversies have been channeled through the complete administrative process. The exhaustion requirement serves to avoid collateral, dilatory action . . . and to ensure the efficient, uninterrupted progression of administrative proceedings and the effective application of judicial review. It provides an agency with an opportunity "to correct its own errors, to afford the parties and the courts the benefit of [the agency's] experience and expertise, and to compile a [factual] record which is adequate for judicial review.

*Id.*

However, the rule requiring exhaustion of administrative remedies is not without exceptions.

> A party is excepted from the exhaustion requirement when the remedy is inadequate or would be futile, or when some equitable consideration precludes application of the rule. To prevail upon a claim of futility, one must show that the administrative agency was powerless to effect a remedy or that it would have been impossible or fruitless and of no value under the circumstances. Furthermore, the requirement of exhaustion of administrative remedies will be relaxed when there is grave doubt as to the availability of the administrative remedy.

*Johnson v. Patriotic Fireworks*, 871 N.E.2d 989, 994 (Ind. 2007) (citing *Higgason v, Lemmon*, 818 N.E.2d 500, 503-04 (Ind. Ct. App. 2004)).

In support of their argument that Singleton was required to exhaust administrative remedies even when faced with a Board member's perceived bias, Appellants point to *New Trend Beauty School, Inc. v. Indiana State Board of Beauty Culturist Examiners*, 518 N.E.2d 1101 (Ind. 1988). In *New Trend*, the Beauty School sought to escape the exhaustion requirement by seeking a declaratory action that "[a]n administrative proceeding before the Board is futile because the Board's bias and prejudice against New Trend has preordained a negative result" and will result in a violation of its due process rights. *Id*. at 1104. While the administrative proceeding was ongoing, the Beauty school attempted to depose each member of the Board to determine their biases against the Beauty School. *Id*. at 1102. After the Board prohibited the discovery sought, the Beauty School filed its complaint before the trial court. *Id*. at 1103. The Beauty School requested the trial court to dismiss New Trend's complaint for failure to exhaust administrative remedies. *Id*.

The supreme court noted that

> [e]ven though we must take New Trend's allegations of bias on the part of individuals as true, we may not assume that the Board will act on those biases and prejudices. To the contrary, we must presume the Board will act properly with or without recusal of the allegedly biased members. In the absence of demonstration of actual bias, the courts should not interfere with the administrative process. To do otherwise would severely curtail the principle that judicial review is unavailable if an administrative action is only anticipated.

*Id*. at 1105 (internal references omitted). Thus, in light of a perceived bias by an administrative agency, the best action is before the Board itself, in the form of appropriate objections and/or motions for disqualifications. *Id*.

11

> Such procedure will give the Board the opportunity to correct or prevent an error as a result of bias, without judicial interference. It will also provide New Trend the opportunity to preserve error in anticipation of judicial review, upon the issue of whether the Board acted arbitrarily or capriciously. Upon judicial review, outside evidence may be allowable to show bias despite the prohibition of *de novo* hearings. Thus, if bias is indeed present in the Board's proceedings, New Trend has an adequate administrative remedy to protect its due process rights and is not entitled to the equitable relief requested here.

*Id.* at 1105-06.

A similar result was reached in *Ripley County Bd. of Zoning Appeals v. Rumpke of Indiana, Inc.*, 663 N.E.2d 198 (Ind. Ct. App. 1996), *trans. denied*. In *Rumpke*, after the administrative proceeding was finalized, Rumpke sought judicial review, alleging among other things, bias by one of the board members. *Id.* at 203. The trial court made specific findings indicating that a board member was biased because of his past dealings with Rumpke's landfill. *Id.* at 209. Specifically, it found that the board member owned property near the landfill and had on numerous occasions complained about its operations. *Id.* Additionally, the trial court found that the board member had led an effort to enforce a 300 foot setback requirement against Rumpke. *Id.* Finally, the trial court noted several comments the board member allegedly made against Rumpke, including that if he could run Rumpke out of Ripley County he would. *Id.* On appeal, we affirmed the trial court's finding of bias and noted that "[w]hen a biased member participates in a decision, the decision will be vacated." *Id.* at 210. However, we declined to remand for another administrative hearing without the biased board member because Rumpke had not requested that the board member remove himself from the decision-making process and thus had waived the error. *Id.* *See also Adkins v. City of*

12

*Tell City*, 625 N.E.2d 1298, 1303 (Ind. Ct. App. 1993) (Even if bias exists, we must presume the Board will act properly with or without recusal of the allegedly biased members).

On the other hand, in advancing its argument that it was not required to exhaust the administrative remedies the Drainage Board could offer, Singleton relies on *Ind. Dep't of Envtl. Mgmt v. Twin Eagle LLC*, 798 N.E.2d 839, 844 (Ind. 2003). *Twin Eagle* was a declaratory judgment action brought by a real estate developer against the Indiana Department of Environmental Management (IDEM), challenging some interim regulations governing wetlands' development that the agency had promulgated following a decision by the United States Supreme Court stating that the development and use of certain wetlands could not be constitutionally regulated by Congress. *Id*. at 841-42. The developer in *Twin Eagle* apparently feared that the agency would apply the interim regulations to its project and sought various declarations of law as to the agency's authority to regulate in this area and, if it had authority, the validity of interim regulations. *Id*. at 844. The supreme court found that exhaustion of administrative remedies was unnecessary "[t]o the extent the issue turns on statutory construction, [and] whether an agency possesses jurisdiction over a matter [as that] is a question of law for the courts." *Id*. It was in this context that the court concluded that the exhaustion of administrative remedies "may not be appropriate if an agency's action is challenged as being ultra vires and void," or otherwise beyond the scope of the agency's authority. *Id*.

This case differs from *Twin Eagle* in material respect. Unlike *Twin Eagle*, where the court was presented with a clear legal question, the issue whether Singleton can have

13

a fair proceeding due to Scheub's alleged bias, is a mixed question of law and fact, and, quite likely, a pure question of fact.

Turning to Singleton's claim that Scheub was biased, we note that the record is replete with instances where Scheub interfered with Singleton's rezoning procedure. As a member of the Plan Commission that reviewed Singleton's petition for re-zoning, Scheub was a vocal opponent of Singleton's request. The record reflects that Scheub and the County engineer collaborated to "make the project so expensive [Singleton goes] away." (Appellee's App. p. 6). Ultimately, the Plan Commission gave an unfavorable recommendation of the project to the Lake County Council. During the public hearing before the Lake County Council, Scheub spoke as the remonstrators' representative and actively advocated against the rezoning petition. Despite Scheub's interference, the Lake County Council approved the rezoning.

Although the rezoning request had been granted, Singleton still required a permit from the Drainage Board, on which Scheub sat as chairman. Because of Scheub's earlier interactions and vocal opposition to the quarry project, Singleton contacted the legal counsel for the Lake County Board of Commissioners and the Drainage Board, requesting Scheub's recusal on the drainage permit. Legal counsel advised that Scheub declined. Thereafter, on February 9, 2011, Singleton filed a Complaint seeking a declaratory judgment that Scheub's participation in or attempts to influence the Drainage Board's consideration of Singleton's permit application would deprive Singleton of due process and should be enjoined.

14

Here, as in *Rumpke*, it is clear that Scheub's actions in the quarry project amounted to an actual bias against Singleton. In order to give the Drainage Board an opportunity to prevent an error as a result of bias, Singleton requested Scheub's disqualification. *See New Trend*, 518 N.E.2d at 1105. Upon the Drainage Board's refusal to disqualify Scheub, any further action by the Drainage Board became futile and of no value under the circumstances because any decision in which a biased Board Member participates will be vacated. *See Patriotic Fireworks*, 871 N.E.2d at 994; *Couch v. Hamilton County Bd of Zoning Appeals*, 609 N.E.2d 39, 42 (Ind. Ct. App. 1993). Therefore, as the exhaustion of administrative remedies was excused, the trial court acquired subject matter jurisdiction over the cause and properly denied Appellants' motion to dismiss.[2]

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly denied Appellants' motion to dismiss for lack of subject matter jurisdiction.

Affirmed.

BRADFORD, J. and BROWN, J. concur

---

[2] Appellants only challenge the trial court's denial of their motion to dismiss; they do not challenge the trial court's enforcement of the settlement agreement, disqualifying Scheub and replacing him with McDevitt.

15