ST. CHARLES TOWER, INC.,
Appellant–Plaintiff,

v.

BOARD OF ZONING APPEALS OF
EVANSVILLE, VANDERBURGH
COUNTY, Appellee–Defendant.

No. 82A01–0603–CV–128.

Court of Appeals of Indiana.

Oct. 11, 2006.

James D. Johnson, Krista B. Lockyear, Rudolph, Fine, Porter, & Johnson, LLP, Evansville, IN, Attorneys for Appellant.

Joseph H. Harrison, David E. Gray, Evansville, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant–Plaintiff, St. Charles Tower, Inc. (St. Charles), appeals the trial court's denial of its Petition for a Writ of Certiorari requesting the trial court to reverse the decision of Appellee–Defendant, The Board of Zoning Appeals of Evansville–Vanderburgh County (BZA), which denied St. Charles a special use permit for the construction of a wireless communications tower.[1]

We reverse and remand with instructions.

1. Oral argument was held on September 7, 2006. We commend counsel for their excellent and informative presentations.

## ISSUE

St. Charles raises one issue on appeal which we restate as: Whether the BZA's decision to deny St. Charles' request for a special use permit is supported by substantial evidence.

## FACTS AND PROCEDURAL HISTORY

St. Charles is a Missouri corporation with its principal place of business in St. Charles, Missouri. The corporation is engaged in the business of constructing and installing wireless telecommunications tower facilities. Its customers include Cingular and UbiquiTel, a subsidiary of Sprint. On February 24, 2005, St. Charles petitioned the BZA for a special use permit, SU 15, to erect a 185–foot monopole cellular tower with lightening rod on real estate located at Felstead Road in Vanderburgh County, which is zoned agricultural.

Additionally, upon receipt of a SU 15 approval, the Vanderburgh County Zoning Code section 17.28.030(J) requires that "any tower permitted with SU 15 approval shall be set back from any residential dwelling, property line of an undeveloped residential district or recorded residential subdivision a distance of two feet for each foot of height of the tower or 300 feet, whichever is greater." (Appellant's App. p. 102). Because St. Charles' proposed location of the cellular tower failed to meet this setback requirement, St. Charles also filed a verified application for a variance in the event its request for the SU 15 was granted by the BZA.

On May 19, 2005, the BZA conducted a public hearing at which several remonstrators appeared and spoke. At the conclusion of the hearing, the BZA denied St. Charles' petition for a SU 15. Thereafter, St. Charles withdrew its application for a setback variance. Specifically, the BZA made the following findings and determination in pertinent part:

16. During the BZA hearing, St. Charles presented evidence that the proposed [c]ell [t]ower would allow the co-location of multiple wireless service providers.

17. According to St. Charles, the [c]ell [t]ower is necessary to improve and provide cellular service coverage within the vicinity of the [p]roperty.

18. Remonstrator, Pat Conner, spoke against the [c]ell [t]ower and testified that he gets excellent reception when using his non-Cingular service cell phone at his home [ ].

19. Remonstrator, Eric Saubier [ ], spoke against the [c]ell [t]ower and testified that there are cell phone towers currently located about two (2) miles away from the [p]roperty at the USI overpass at the Lloyd Expressway, and St. Charles should consider locating their proposed [c]ell [t]ower in such area.

20. Remonstrator, Elizabeth Hofmann [ ], spoke against the [c]ell [t]ower and testified that St. Charles tower should consider locating their proposed [c]ell [t]ower in a different area, possibly on Peal Drive, approximately one (1) mile from the [p]roperty.

21. Remonstrator, Fred Paget[t] of the Westside Improvement Association spoke against the [c]ell [t]ower testifying that because the [c]ell [t]ower would be located in a residential area, it would create an adverse effect on the surrounding neighbors and impact the value of their properties. In addition, Mr. Pagett testified that St. Charles' proposed use of the [p]roperty is not in harmony with the Evansville and Vanderburgh County Comprehensive Plan.

22. Pursuant to section 17.28.030 I(4) of the Vanderburgh County Zoning Code, St. Charles did not demonstrate

sufficient evidence establishing that existing cellular towers or structures could accommodate the proposed [c]ell [t]ower request.

23. Although the [p]roperty is zoned Agricultural, the [c]ell [t]ower site proposed [ ] is not an appropriate location for a[c]ell [t]ower because St. Charles' application does not comply with Section 17.28.030 J of the Vanderburgh County Zoning Code in that the proposed [c]ell [t]ower is located in a residential area, just 168 feet from the nearest residence.

24. The proposed use of the [p]roperty for [c]ell [t]ower purposes by St. Charles is not in harmony with the Evansville and Vanderburgh County Comprehensive Plan which specifically encourages the compliance with all Zoning Code requirements to reduce the need for variances.

25. The proposed use of the [p]roperty for [c]ell [t]ower purposes by St. Charles is not essential or desirable to the public convenience and welfare in that the neighbors who reside within the immediate vicinity of the [p]roperty are opposed to the application.

26. The BZA votes 5–2 to deny St. Charles' Application for a special use permit for a[c]ell [t]ower to be constructed and located upon the [p]roperty.

(Appellant's App. pp. 44–45).

On June 9, 2005, St. Charles filed its Petition for Writ of Certiorari, Judicial Review and Declaratory Judgment. On June 16, 2005, the BZA approved its findings of fact and determination. Consequently, on December 19, 2005, the trial court conducted a hearing on St. Charles' petition and on March 6, 2006 issued its Findings of Fact, Conclusions of Law and Judgment affirming the BZA's decision.

St. Charles now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

St. Charles contends the trial court erred by affirming the BZA's denial of its request for a special use permit. Specifically, it argues that the BZA improperly considered the residential character of the area surrounding the proposed cellular tower and its close proximity to several residences. Thus, St. Charles maintains that absent such improper considerations, no substantial evidence supports the BZA's decision.

### I. Standard of Review

When reviewing a decision of a zoning board, we are bound by the same standard of review as the certiorari court. *S & S Enterprises, Inc. v. Marion County Bd. of Zoning Appeals*, 788 N.E.2d 485, 489 (Ind.Ct.App.2003), *trans. denied.* Indiana Code Section 36–7–4–1003 provides in pertinent part that "Each person aggrieved by a decision of the board of zoning appeals or the legislative body may file with the circuit or superior court of the county in which the premises affected are located, a verified petition setting forth that the decision is illegal in whole or in part and specifying the grounds of the illegality." Thus, when reviewing a decision of a board of zoning appeals, the trial court must determine if the board's decision was incorrect as a matter of law. *Brownsburg Conservation Club, Inc. v. Hendricks Co. Bd. of Zoning Appeals*, 697 N.E.2d 975, 977 (Ind.Ct.App.1998). The trial court may not conduct a trial *de novo* or substitute its decision for that of the board. *Id.* Our review is governed by the same considerations. *Id.* However, findings of fact are required to ensure adequate judicial review of administrative decisions. *Id.* at 978.

In the context of zoning adjudications, we will set aside the board's spe-

cific findings only if they are clearly erroneous, meaning the record lacks any facts or reasonable inferences supporting them. *Network Towers, LLC v. Bd. of Zoning Appeals of LaPorte Co., Ind.,* 770 N.E.2d 837, 844 (Ind.Ct.App.2002). A decision is clearly erroneous when it lacks substantial evidence to support it. *Town of Beverly Shores v. Bagnall,* 590 N.E.2d 1059, 1061 (Ind.1992). When determining whether an administrative decision is supported by substantial evidence, the reviewing court must determine from the entire record whether the agency's decision lacks a reasonably sound evidentiary basis. *Crooked Creek Conservation and Gun Club, Inc. v. Hamilton Co. North Bd. of Zoning Appeals,* 677 N.E.2d 544, 548 (Ind.Ct.App. 1997), *reh'g denied, trans. denied.* Thus, we have noted that evidence will be considered substantial if it is more than a scintilla and less than a preponderance. *Id.* at 549. In other words, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

 Because the instant case involves the proposed construction of a telecommunications tower, the Telecommunications Act of 1996, 47 U.S.C. § 151 *et seq.* (TCA) is implicated. The TCA "provides protections from irrational or substanceless decisions by local authorities." *Southwestern Bell Mobile Sys., Inc. v. Todd,* 244 F.3d 51, 57 (1St. Cir.2001). Nonetheless, the TCA does not federalize telecommunications land use law; instead, Congress struck a balance between localities and personal wireless service providers. *Id.* Under the TCA, local governments retain control over decisions regarding the placement, construction, and modification of personal wireless service facilities. 47 U.S.C. § 332(c)(7)(A); *see also id.*

However, local government's control is subject to substantive and procedural limi-

tations such that local authorities may not unreasonably discriminate among providers of functionally equivalent services or effectively prohibit the provision of personal wireless services. *Southwestern Bell Mobile Sys., Inc.,* 244 F.3d at 57. Accordingly, the TCA co-exists with the authority granted to local boards of zoning appeals and, as before this court, specifies that a zoning board decision must rest upon substantial evidence. 47 U.S.C. § 332(c)(7)(B)(iii). Regardless, the TCA limits the ability of a board of zoning appeals to satisfy the requirement of substantial evidence by considering environmental effects of radio transmission as a reason for a denial:

> No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

47 U.S.C. § 332(c)(7)(B)(iv).

## II. *Special Permit and Variance*

In the instant case, both a special use permit, SU 15, and a variance are involved. Specifically, St. Charles requested the BZA to approve a special use permit to build a cellular tower in an agriculturally zoned area. Upon the envisioned approval of the SU 15, St. Charles also sought a variance from the zoning setback requirements to the nearest residence, as stipulated in section 17.28.030(J).

 We have previously noted that a special permit and a variance are subject to different requirements. "A special exception is a use permitted under the zoning ordinance upon the showing of certain statutory criteria," while "a variance is a deviation from the legislated zoning classi-

fication applicable to a given parcel of land." *S & S Enterprises, Inc.,* 788 N.E.2d at 490. Moreover, these two zoning proceedings differ significantly in the evidentiary burden they impose on the party seeking the use. In general, the granting of a special exception is mandatory once the petitioner shows compliance with the relevant statutory criteria; whereas, the granting of a variance is a matter committed to the discretion of boards of zoning appeal. *Id.* For this reason, we have observed that the standards for a special use permit are less stringent than those for a variance, because the former enjoys legislative sanction while the latter does not. *Network Towers, LLC,* 770 N.E.2d at 837.

However, in *Crooked Creek,* we also noted that while some special exception ordinances are regulatory in nature and require an applicant to show compliance with certain regulatory requirements (*e.g.* structural specifications), providing the zoning board with no discretion, some special exception ordinances provide a zoning board with a discernable amount of discretion (*e.g.* those which require an applicant to show that its proposed use will not injure the public health, welfare, or morals). *Crooked Creek,* 677 N.E.2d at 547. In other words, when the zoning ordinance provides the board of zoning appeals with a discernable amount of discretion, the board is entitled, and may even be required by the ordinance, to exercise its discretion. *Id.* at 548. When this is the case, the board is entitled to determine whether an applicant has demonstrated that its proposed use will comply with the relevant statutory requirements. *Id.*

The special use ordinance in the present case confers upon the BZA a hybrid level of discretion. In accordance with Section 17.28.030(I) of the Vanderburgh County Zoning Code, an applicant seeking a SU 15

from the BZA must submit the following information:

1. Commercial site plans meeting the requirements for Commercial Review by the Site Review Committee, including a surveyor certification of the exact location of tower from property lines; center lines of abutting streets or rights-of-way; distance to the nearest residential district, residence, or recorded residential subdivision.

2. Structural plans including elevation and plan views showing height above grade level and dimensions is required in addition to site plan.

3. Information regarding the number of antennas that the proposed new tower or structure is designed to or can safely accommodate.

4. Evidence demonstrating that no existing tower or structure can accommodate applicant's proposed antenna, either because there are no existing towers or structures meeting the applicant's engineering requirements within the geographic area that the antenna is intended to serve, or if there are towers or structures in the geographic area, evidence that such structures do not have sufficient height or structural strength to meet the applicant's engineering requirements. This section shall not be interpreted to mandate, but rather only to encourage co-location.

(Appellant's App. pp. 101–102). Whereas section 17.28.030(I) clearly does not provide any discretion to the BZA in its decision of the SU 15, its accompanying section 17–28–030(B), governing the procedure for granting special use permits, awards the BZA a certain level of discretionary power. Section 17–28–030(B) states, in pertinent part, that

After public hearing, the [BZA] shall make its determination for approval, de-

nial, or modification of the special use classification based on the following criteria:

1. Whether the specific site is an appropriate location for the use;

2. Whether the use as developed will adversely affect the surrounding area;

3. Whether there will be nuisance or serious hazard to vehicles, pedestrians, or residents;

4. Whether adequate and appropriate facilities will be provided for proper operation of the uses;

5. Whether the use is in harmony with the Evansville and Vanderburgh County comprehensive plan; and

6. Whether the use is essential or desirable to the public convenience and welfare.

(Appellant's App. p. 100).

On the other hand, zoning ordinance 17–28–030(J), instituting setback requirements for the construction of cellular towers to which St. Charles requested a variance, calls for the following:

In addition to all other limitations and provisions contained in the zoning code, *any tower permitted with SU 15 approval* shall be set back from any residential dwelling, property line of an undeveloped residential district or recorded residential subdivision a distance of two feet for each foot of height of the tower or 300 feet, whichever is greater.

(Appellant's App p. 102) (emphasis added). Thus, St. Charles' requested deviation from this zoning ordinance is a matter committed to the discretion of boards of zoning appeal. *S & S Enterprises, Inc.*, 788 N.E.2d at 490.

Here, the zoning ordinance's language regarding a tower's setback requirements stipulates the approval of the SU 15 as a prerequisite to the application of the required 300 feet setback distance. However, our review of the BZA's Findings of Fact and Determination leaves us convinced that the BZA convoluted both ordinances. Besides determining during its public hearing whether St. Charles' request for a SU 15 complied with the statutory zoning requirements for a special use permit, the BZA appeared to be mainly concerned with the setback requirements included within section 17.28.030(J). Nevertheless, during this hearing only the SU 15 was before the BZA, not the variance, and upon the BZA's denial of the SU 15, St. Charles withdrew its request for a variance to the setback distance. As the zoning ordinance sets forth different requirements for a SU 15 and a variance, we will discuss each in turn.

A. *Special Use Permit*

St. Charles now contends that the BZA's denial for a SU 15 was not supported by substantial evidence. In essence, St. Charles argues that BZA's conclusory findings fail to adequately articulate a factual basis, rendering them inadequate as a matter of law. It maintains that its submitted evidence shows compliance with the statutory requirements and therefore, the BZA should have granted its application for a special use permit.

At the public hearing on St. Charles' application, St. Charles offered evidence establishing that the area suffered a coverage gap in cellular services. Based on this gap, St. Charles demonstrated that the proposed site, located in an agriculturally zoned area, is the only legally and technologically viable alternative to eradicate the gap. St. Charles submitted maps to the BZA showing the exact location of the proposed cellular tower and comparing the current cellular coverage without the proposed tower with the coverage that could be provided with the construction of the tower. Additionally, testimony from rep-

resentatives from Cingular and UbequiTel unequivocally confirmed the unsatisfactory current coverage and reassured the BZA that both providers would co-locate on the same tower. Responding to the BZA's concerns regarding possible alternatives for the construction of the proposed tower, St. Charles testified that it actively investigated possible sites for at least eight months, including the viability of using other towers in the nearby area. Furthermore, St. Charles clarified that the proposed tower would be built as a stealth pole with interior antennas, surrounded by an eight feet privacy fence and painted to blend in with the skyline. Accordingly, based on the submitted evidence, we must conclude that St. Charles satisfied the statutory requirements for a SU 15 as enumerated in zoning ordinance section 17.28.030(I).

 With regard to the more discretionary requirements set forth in section 17–28–030(B), St. Charles commends that the evidence presented by the remonstrators was not sufficiently substantial to support the BZA's determination. However, in *Crooked Creek* we stated that the burden of establishing satisfaction of the relevant statutory criteria rests with the applicant for a special exception. *See Crooked Creek*, 677 N.E.2d at 548. We have accordingly been cautious to avoid the imposition upon remonstrators of an obligation to come forward with evidence contradicting that submitted by an applicant. Here, neither the BZA nor those opposed to the grant of the SU 15 were required to negate St. Charles' case. Nevertheless, since the BZA determined that St. Charles was not entitled to a special exception, and based its decision in part upon evidence presented by the remonstrators, we will determine whether the BZA's decision was based upon substantial evidence by examining the sufficiency of the evidence presented by the remonstrators. *See id.*

Initially, the BZA finds that the construction of a cellular tower would adversely impact the surrounding property values. However, the only support for this finding consists of the opinion of a remonstrator who lives in the vicinity of the disputed tower. His statement is limited to a personal opinion based on aesthetic preferences. In *Network Towers, LLC*, 770 N.E.2d at 845, we held that "without any factual finding to support a finding of decreasing property values, the [BZA's] finding [ ] cannot stand." Likewise, here, the BZA's finding cannot be upheld.

Next, the BZA determined that the proposed location of the tower is not in harmony with the Evansville and Vanderburgh County Comprehensive Plan. Again, the only evidence the BZA points toward is the mere testimony of a remonstrator, unsupported by any factual finding or even the appropriate sections of the Comprehensive Plan. *See id.* Lastly, the BZA based its denial on the undesirableness of the cell tower to the public convenience and welfare because of the opposition by neighbors residing in the immediate vicinity of the tower's proposed site. The mere rephrasing of a statutory requirement followed by a generalized attempt to identify some factual evidence is clearly not sufficient to support the BZA's finding.

Based on the evidence before us, we conclude that St. Charles provided sufficient evidentiary support to satisfy the statutory criteria of zoning ordinance 17.28.030(I). At the same time, while there need not be a preponderance of evidence supporting the BZA's denial of St. Charles' request for a SU 15, there must be at least a scintilla of evidence underlying its decision. *See id.* Here, we find that the evidence upon which the BZA based its denial pursuant to its discretion-

ary powers under zoning ordinance 17.28.030(B) was devoid of probative evidence and the quantum of legitimate evidence was almost non-existent as to convince us that the BZA's findings do not rest on a rational basis. *See id* at 844; *Boffo v. Boone Co. Bd. of Zoning Appeals,* 421 N.E.2d 1119, 1125 (Ind.Ct.App.1981). For this reason, we find that the BZA's findings and determination denying St. Charles' grant of a SU 15 are clearly erroneous. Thus we reverse and remand this cause to the trial court with instructions to enter judgment for St. Charles.

### B. *Variance*

Next, St. Charles requests us to grant and issue its variance to the setback requirement stipulated in zoning ordinance 17.28.030(J). However, the record clearly reflects that upon the BZA's denial of its SU 15 during the public hearing, St. Charles withdrew its request for a variance. Regardless of St. Charles' withdrawal, in its Findings of Fact, Conclusions of Law, and Judgment, the trial court inferred, in pertinent part, that

> However, the Variance Application would have been heard by the same BZA, and the BZA obviously found that permitting the tower to be placed as requested would affect the adjacent property in a substantially adverse manner. That being the case, if the BZA had heard the variance request, it would

**2.** Indiana Code section 36–7–4–918.5(a)(2) provides that

Board of zoning appeals; variance from development standards
(a) A board of zoning appeals shall approve or deny variances from the development standards (such as height, bulk, or area) of the zoning ordinance. A variance may be approved under this section only upon a determination in writing that

. . .

(2) the use and value of the area adjacent to the property included in the variance will

have been required to reject it under I.C. § 36–7–4–918.5(a)(2).[2]

(Appellant's App. p. 24).

■ We note that courts may not make findings for the agency by inference based on evidence in the record. *Boffo,* 421 N.E.2d at 1125. It is the agency's duty to make the findings; courts may only review, not make by inference, such findings. *Id.* Whether such findings are supported by evidence in the record, however, is a matter courts may determine. *Id.* Thus, as the BZA never heard St. Charles' purported evidence on its request for a variance to the setback requirement, no proper findings were entered in the record. Accordingly, as we are not entitled to infer findings for the BZA, the variance is not presented for our review. Therefore, we decline St. Charles' invitation to grant its variance.

### CONCLUSION

Based on the foregoing, we find that the BZA's decision to deny St. Charles' request for a SU 15 is not supported by substantial evidence.

Reversed and Remanded with instructions.

MAY, J., concurs.

BAILEY, J., dissents with separate opinion.

not be affected in a substantially adverse manner; . . . .
As we noted above, the only support in the record for this finding is the oral testimony of a remonstrator, unsupported by any factual findings. *See Network Towers, LLC.,* 770 N.E.2d at 845.

BAILEY, Judge, dissenting.

I respectfully dissent. I do so because (1) my review of the evidence presented to the BZA does not convince me that St. Charles Tower met its burden of proof for a special use permit, (2) the BZA findings are supported by substantial evidence, and (3) the applicable law should not be manipulated to require three established landowners to live in close proximity to a 185 foot tall cellular tower.

The majority concludes that St. Charles submitted evidence to establish its compliance with the statutory requirements by showing a "coverage gap" and further, that the proposed site "is the only legally and technologically viable alternative to eradicate the gap." At 292. My reading of the BZA hearing transcript reveals no "coverage gap" per se. Rather, there is a problem with coverage for Cingular customers. Granted, St. Charles' attorney Krista Lockyear represented to the BZA that her client had no secondary site, had "investigated ... the ability to put this tower in a different location to no avail," (Tr. 82), and had attempted co-location and "those attempts have been turned down." (Tr. 91.) Sprint representative Jason Evans testified, "Sprint has actively looked for eight months." (Tr. 90.) Nevertheless, in my view, arguments or representations of counsel do not establish the absence of all other viable alternatives. The testimony of remonstrators indicates that St. Charles proposed to locate their tower by "buying out" or leasing the least expensive and most neglected property in the area. On balance, I believe that the BZA decision did not deprive St. Charles of its only appropriate site for locating its cellular tower, only the cheapest and easiest site to use.

Second, I do not believe that the BZA findings suffer from fatal deficiency. St. Charles has suggested, and the majority has apparently agreed, that the BZA is constrained to consider only that evidence of land use and impact consistent with an existing zoning classification. I disagree that the BZA's focus need be so narrow, inasmuch as the BZA is specifically directed to consider adverse effects of a proposed use on the "surrounding area." Too, the BZA is directed to look at potential hazard to residents, without reference to zoning classification. Finally, the BZA must consider a proposed use in light of the comprehensive plan and public welfare. Thus, regardless of the classification applicable to a discrete site, the BZA must always look at the bigger picture.

St. Charles also complains that the BZA "got the cart before the horse" when it considered the lack of set-back compliance, despite the withdrawal of the petition for a variance. However, the petition was not withdrawn until after the hearing was concluded, and the BZA was duly advised that the proposed tower location was in close proximity to three residences. In light of its obligation to consider the proposal's impact on the public convenience and welfare, the BZA would have been derelict in its duties had it disregarded such information.

Finally, St. Charles has convinced the majority that the BZA findings were deficient because they were directly or indirectly based on "concern over the environmental effects of radio frequency emissions." Appellant's Br. at 16. St. Charles characterizes the testimony of the remonstrators as focusing on aesthetics, speculative diminution in property values and perceived safety hazards of radio emissions. Arguably, under the TCA, such concerns cannot provide an independent basis for the denial of a proposed cellular tower erection.

However, the remonstrators in this case did not testify merely that they feared radio emissions but also expressed concern about the tower falling. Remonstrator Eric Saubier urged the BZA to consider "the legitimate fall problem" and opined, "there is a 300 foot limit for a reason." (App.86.) Remonstrator Carol Straub, a next door neighbor to the proposed site, declared that she and her ten-year-old child would not go into the yard to play if the proposed tower were erected "because of the aspect that the tower may fall on us." (App.88.) The BZA properly drew a distinction between a perceived health risk from radio emissions and the remonstrators' concern about the potential for a tower to fall in the event of a structural defect, an accidental impact, or a natural disaster. Undoubtedly, the setback requirement was enacted as a cautionary measure with a view toward such legitimate concerns. The BZA was not remiss in considering such. The record contains substantial evidentiary support for the BZA's denial of the special use permit.

In conclusion, I think it appropriate to look at what the majority decision does, or does not, accomplish. Mandating the grant of a special use permit still does not ensure that St. Charles is able to erect its cellular tower in its choice of locations. It is still prohibited by local zoning law from locating its tower within 300 feet of a residence, or within two feet for each foot of tower height. The TCA does not contravene or supplant this requirement. There are three pre-existing residences within 370 feet of the proposed site of the 185-foot tower. One is 168 feet away. There is simply no law, federal or state, that requires these landowners to be subjected to a cellular tower within falling distance, just because the proponent of the tower insists upon attaining the most economical site to facilitate its competitive advantage in the cellular communications market. The local community is entitled to control construction within its domain, a privilege not usurped by the TCA.

The BZA's decision denying St. Charles a special use permit rested upon substantial evidence. Accordingly, the trial court did not err by refusing to reverse the decision upon a writ of certiorari. I would affirm the trial court.