ATTORNEYS FOR APPELLANT
James D. Johnson
Krista B. Lockyear
Evansville, Indiana

ATTORNEYS FOR APPELLEE
Joseph H. Harrison, Jr.
David E. Gray
Evansville, Indiana

# In the
# Indiana Supreme Court

No. 82S01-0702-CV-69

ST. CHARLES TOWER, INC.,

*Appellant (Plaintiff below)*,

v.

BOARD OF ZONING APPEALS OF
EVANSVILLE-VANDERBURGH COUNTY,

*Appellee (Defendant below)*.

Appeal from the Vanderburgh Circuit Court, No. 82C01-0506-PL-466
The Honorable Carl A. Heldt, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 82A01-0603-CV-128

**September 18, 2007**

**Sullivan, Justice.**

The Vanderburgh County Zoning Code requires cellular telephone towers to be located a distance of two feet for each foot of height of the tower or 300 feet, whichever is greater, from any residence. St. Charles Tower, Inc., proposed to erect a 185-foot cell tower within 370 feet of three residences, one of which was within 168 feet of the tower's proposed location. The Board of Zoning Appeals of Evansville-Vanderburgh County properly rejected an application to erect the cell tower based on these facts.

## Background

St. Charles Tower, Inc. ("St. Charles"), a corporation that constructs and installs cellular tower facilities, sought to erect a cell tower in Vanderburgh County. Under the circumstances, the county zoning code required that St. Charles obtain both a special use permit and a variance from a setback requirement in the zoning ordinance.

In February 2005, St. Charles submitted its request to the Board of Zoning Appeals of Evansville-Vanderburgh County ("BZA"), the administrative body authorized by Indiana statute[1] and designated by the Vanderburgh County Code[2] to consider applications for special use permits and variances. In May, the BZA heard argument from St. Charles and from remonstrators on the applications. At the conclusion of the hearing, the BZA voted to deny St. Charles's application for the special use permit and St. Charles withdrew its application for the variance.

Specifically, the BZA found:

- St. Charles did not demonstrate sufficient evidence under section 17.28.030, subsection I(4), of the county zoning code to justify the proposed cell tower request.

- Although the property was zoned agricultural, the proposed cell tower site was not an appropriate location for a cell tower because St. Charles's application did not comply with section 17.28.030, subsection J, of the county zoning code in that the proposed cell tower would be located in a residential area, 168 feet from the nearest residence.

- The proposed cell tower was not in harmony with the provisions of the Evansville and Vanderburgh County Comprehensive Plan that specifically required compliance with all zoning code requirements to reduce the need for variances.

- The proposed cell tower was not essential or desirable to the public convenience and welfare in that the neighbors who resided within the immediate vicinity were opposed to the application.

---

[1] Ind. Code § 36-7-4-918.2 (2004).

[2] Vanderburgh County, Ind., Vanderburgh County Code § 17.28.030, http://www.vanderburgh.org/auditor/codification/ordinances.html (last visited Sept. 17, 2007).

In June, St. Charles timely filed in court a Petition for Writ of Certiorari, Judicial Review, and Declaratory Judgment, seeking to overturn the BZA's decision. In December, the trial court conducted a hearing on St. Charles's petition and in March 2006 entered judgment, including findings of fact and conclusions of law, affirming the BZA's decision.

The Court of Appeals reversed, finding that the BZA's decision to deny St. Charles the special use permit was not supported by substantial evidence, and remanded for a hearing as to whether St. Charles was entitled to the variance. St. Charles Tower, Inc. v. Bd. of Zoning Appeals of Evansville, Vanderburgh Co., 855 N.E.2d 286 (Ind. Ct. App. 2006). Judge Bailey dissented. The BZA petitioned for, and we granted, transfer. 869 N.E.2d 450 (Ind. 2007) (table).

**Discussion**

**I**

A trial court and an appellate court both review the decision of a zoning board with the same standard of review. Crooked Creek Conservation and Gun Club, Inc. v. Hamilton County North Bd. of Zoning Appeals, 677 N.E.2d 544, 547 (Ind. Ct. App. 1997), trans. denied, 690 N.E.2d 1182 (Ind. 1997) (table). A proceeding before a trial court or an appellate court is not a trial de novo; neither court may substitute its own judgment for or reweigh the evidentiary findings of an administrative agency. Id. See also Equicor Dev., Inc. v. Westfield-Washington Twp. Plan Comm'n, 758 N.E.2d 34, 37 (Ind. 2001). The appropriate standard of review, "whether at the trial or appellate level, is limited to determining whether the zoning board's decision was based upon substantial evidence." Crooked Creek Conservation, 677 N.E.2d at 547.

St. Charles argues the definition of "substantial evidence" for purposes of this case is different from that usually employed in Indiana zoning cases because this case is subject to the federal Telecommunications Act of 1996, 47 U.S.C. §§ 151-615b ("TCA"). St. Charles, however, does not articulate what that difference is; rather, it merely contends that "local zoning decisions . . . receive a closer review by the courts than if the TCA were not applicable." (Appellant's Br. in Resp. to Pet. to Trans. at 5.)

3

The relevant section of the TCA provides:

Preservation of local zoning authority.

(A)  General authority.  Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

(B)  Limitations.

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof–

(I)   shall not unreasonably discriminate among providers of functionally equivalent services; and
(II)  shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

. . .

(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

. . .

47 U.S.C. § 332(c)(7).

We agree with the Court of Appeals in its analysis of the meaning of this provision:

The TCA "provides protections from irrational or substanceless decisions by local authorities." Southwestern Bell Mobile Sys., Inc. v. Todd, 244 F.3d 51, 57 (1st. Cir. 2001). Nonetheless, the TCA does not federalize telecommunications land use law; instead, Congress struck a balance between localities and personal wireless service providers. Id. Under the TCA, local governments retain control over decisions regarding the placement, construction, and modification of personal wireless service facilities. 47 U.S.C. § 332(c)(7)(A).

However, local government's control is subject to substantive and procedural limitations such that local authorities may not unreasonably discriminate

4

among providers of functionally equivalent services or effectively prohibit the provision of personal wireless services. Southwestern Bell Mobile Sys., Inc., 244 F.3d at 57. Accordingly, the TCA co-exists with the authority granted to local boards of zoning appeals and, as before this court, specifies that a zoning board decision must rest upon substantial evidence. 47 U.S.C. § 332(c)(7)(B)(iii).

St. Charles Tower, Inc., 855 N.E.2d at 290 (citation omitted).

The "substantial evidence" standard articulated in the TCA is the same as that under Indiana law; that is, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support the decision of the board of zoning appeals. As Judge Moody has observed, "[w]hile the issue as a whole is whether the BZA's decision is supported by substantial evidence, that requirement in § 332(c)(7)(B)(iii) of the TCA simply establishes that courts should apply the traditional standard used for judicial review of agency decisions: if the record as a whole contains such relevant evidence as a reasonable mind would find adequate to support the denial, that decision stands." AT&T Wireless PCS, Inc. v. Town of Porter, 203 F.Supp.2d 985, 994 (N.D. Ind. 2002) (citing Aegerter v. City of Delafield, Wis., 174 F.3d 886, 889 (7th Cir. 1999)).

**II**

Although we agree with the Court of Appeals in its analysis of the legal effect of the TCA substantial evidence test on this case, we part company from our colleagues in their conclusion that the test was not met here. We find that there is substantial evidence in the record to support the BZA's denial of St. Charles's application for a special use permit to erect the cell tower.

As discussed under Background, the BZA denied St. Charles's request for a special use permit under both subsection I(4) and subsection J of section 17.28.030 of the county zoning code. We do not address the BZA's analysis under subsection I(4) because we find its analysis under subsection J – which provides a setback requirement – to be dispositive.

5

Subsection J provides:

> In addition to all other limitation and provisions contained in the zoning code, any tower permitted with SU 15 [Special Use 15] approval shall be set back from any residential dwelling, property line of an undeveloped residential district or recorded residential subdivision a distance of two feet for each foot of height of the tower or 300 feet, whichever is greater.

The BZA found, based on evidence in the record, that the proposed cell tower was to be 185 feet tall, that there were three residences within 370 feet of the proposed tower's location, and that at least one of those residences was within 168 feet of the location.

St. Charles acknowledges that its proposed cell tower did not meet the 300-foot setback requirement of subsection J, but contends that its noncompliance should not be treated as dispositive because the BZA's reliance on the setback requirement was a pretext. Specifically, St. Charles argues that "the BZA and Trial Court ignored the [agricultural] zoning classification of the property and grafted on a residential zoning classification because the neighboring residential property owners remonstrated. The BZA arbitrarily cho[o]se how it believed the property was being used and decided the application accordingly, ignoring the legal zoning classification." (Appellant's Br. at 9.)

We disagree. Even though the property where St. Charles wants to place the cell tower is zoned agricultural, the fact of the matter is that there are residential dwellings in the area. The BZA's finding on this point is explicit. The setback requirement articulated in subsection J is applicable whenever it is proposed that a cell tower be built within at least 300 feet of a residential dwelling. That is, subsection J is not limited to districts zoned residential; it applies equally to all zoning districts where cell towers are permitted. In point of fact, subsection J is superfluous with respect to districts zoned residential in that cell towers are not permitted in those districts at all.

6

The Court of Appeals took the position that the question of a petitioner's entitlement to a special use permit under subsection I was independent of the question of whether it was entitled to a variance from the setback requirement of subsection J. <u>St. Charles Tower Inc.</u>, 855 N.E.2d at 292. Because it found that St. Charles was entitled to a special use permit under subsection I, it remanded the case to the BZA for consideration of whether St. Charles was entitled to the variance. <u>Id.</u> at 294. That is, the Court of Appeals was of the view that (1) the question of whether the proposed location of St. Charles's cell tower complied with the setback requirement was irrelevant to the determination of its entitlement to a special use permit and (2) because St. Charles's special use permit should have been approved, it was entitled to a new proceeding as to whether it was entitled to a variance. Judge Bailey dissented from the majority opinion, <u>id.</u> at 295, on these points and we agree with his dissent.

The Court of Appeals relied on language in subsection J ("any tower permitted with SU 15 approval") to support its conclusion that approval of the special use permit was a prerequisite to application of the setback requirement. But there is equivalent language in subsection I ("all towers . . . permitted with SU 15 approval"). We believe these expressions serve merely a descriptive, and not a substantive, function. Otherwise, there would be a circular result – subsection J could not be invoked to deny a permit until after the permit had been approved under subsection I but subsection I could not be invoked to deny a permit until after the permit had been approved under subsection J! <u>See</u> <u>Robinson v. Wroblewski</u>, 704 N.E.2d 467, 474 (Ind. 1998) ("In construing a statutory provision, we must consider the statute as an entirety, with each part being viewed not as an isolated fragment but with reference to all the other companion provisions." (<u>citing</u> <u>Hinshaw v. Bd. of Comm'rs of Jay County</u>, 611 N.E.2d 637, 639 (Ind. 1993))).

We do not discern an intent by the Vanderburgh County Council to give the phrase "any tower permitted with SU 15 approval" in subsection J a different meaning than the phrase "all towers . . . permitted with SU 15 approval" in subsection I. And because we agree with St. Charles, the BZA, the trial court, and the Court of Appeals that compliance with subsection I is a prerequisite to the granting of an SU 15 permit, we similarly hold that compliance with subsec-

tion J, absent a variance, is also a prerequisite to obtaining an SU 15 permit. Stated differently, satisfaction of the setback requirement of subsection J is a prerequisite to receiving an SU 15 permit just as is compliance with the requirements of subsection I.

General principles of deference support this reading of Vanderburgh County's zoning ordinance. The BZA views compliance with subsection J as a prerequisite to obtaining an SU 15 permit, arguing in its Petition to Transfer that an applicant seeking a special use permit for a cell tower must show that the cell tower will be set back at least 300 feet from the nearest residence or two feet for each foot of height of the tower, whichever is greater. (Appellee's Pet. to Trans. at 4–5.) The "interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless [the] interpretation would be inconsistent with the statute itself." LTV Steel Co. v. Griffin, 730 N.E.2d 1251, 1257 (Ind. 2000).

The BZA and the trial court properly applied subsection J of section 17.28.030 of the county zoning code to deny St. Charles's application for an SU 15 permit.

**IV**

St. Charles makes an alternative – but similar – contention to the effect that its application for a variance from the setback requirement would have been approved except for the fact that the BZA denied the SU 15 permit before addressing the variance from the setback requirement. In other words, St. Charles argues that it is unfair to base the denial of the special use permit on the setback requirement because, as a procedural matter, St. Charles was never able to litigate the setback issue.

This argument by St. Charles mischaracterizes the hearing conducted by the BZA as one that was bifurcated. In his opening statement, Bradley G. Mills, Executive Director/Executive Secretary of the BZA, said, "This is a request for SU-15 approval for a telecommunications tower, and a request for variance approval to relax the minimum setback requirement between the 185-foot telecommunications tower and a residence from 370 feet to 200 feet. The proposed

8

new tower will require two separate votes. The special use is the first vote." (Appellant's App. at 80.)

While this was to be the voting procedure employed at the end of the hearing, it is clear that the application for the special use permit and the application for the variance were considered concurrently during the hearing itself. First, as Mills's statement makes clear, the issues were introduced to the BZA simultaneously. Second, St. Charles itself acknowledges that it "presented evidence that BZA often allows for the relaxation of set[ ]back requirements for cellular towers." (Appellant's Reply Br. at 3.) And the following statements made during the hearing itself indicate that both issues were jointly considered by St. Charles and the BZA:

- In her opening statement, Krista Lockyear, the attorney representing St. Charles, asked that the BZA "approve this variance."

- Wayne Washington, a BZA member, asked Jason Evans, a Sprint representative, "If this variance is denied, what are your options?"

- Lockyear responded to the above query with, "If the variance is denied, we can't get a building permit to build a tower there."

(Appellant's App. at 81, 90.)

While the BZA denied the special use application, thereby eliminating the need for a vote on the variance, St. Charles had a full and fair opportunity to address the setback and variance issue at the hearing.

**Conclusion**

The decision of the trial court and that of the BZA is affirmed.

Shepard, C.J., and Dickson, Boehm, and Rucker, JJ., concur.

9