


FILED

Sep 25 2023, 11:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N   T H E

# Indiana Supreme Court

Supreme Court Case No. 23S-PL-114

## Noblesville, Indiana Board of Zoning Appeals,
*Appellant,*

–v–

## FMG Indianapolis, LLC d/b/a Reagan Outdoor Advertising,
*Appellee.*

Argued: June 29, 2023 | Decided: September 25, 2023

Appeal from the Hamilton Superior Court
No. 29D02-2010-PL-6900
The Honorable Jonathan M. Brown, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 21A-PL-2482

**Opinion by Justice Slaughter**

Chief Justice Rush and Justices Massa and Molter concur.
Justice Goff concurs in the judgment with separate opinion.

**Slaughter, Justice.**

Reagan Outdoor Advertising owns billboards in Noblesville, Indiana. The city classifies billboards as pole signs, which are signs affixed to poles or other uprights installed in the ground. A city ordinance now bans pole signs, but signs like Reagan's that pre-date the ordinance can remain as a legal nonconforming use if they are kept in good repair and not "relocated". After a storm damaged one of its billboard's support posts, Reagan tried to repair them. Reagan removed the sign's display, cut off the broken posts at ground level, and installed new posts a few feet from the posts' existing holes. Before Reagan could reattach the sign's display to the new posts, the city issued a stop-work order after concluding that Reagan had "relocated" the sign, which thus lost its legal nonconforming status. The board of zoning appeals affirmed this determination, but the trial court reversed.

At first blush, the ordinance's ban against "relocating" a sign would seem to ban any "movement" at all, including the de minimis movement of the disputed support posts here. But based on the different ways the ordinance uses "relocate" and "move", we conclude that "relocate" is ambiguous and, consistent with our interpretive canons, must be resolved in Reagan's favor. We hold that Reagan did not relocate its sign and affirm the trial court's judgment for Reagan.

## I

### A

Since the 1970s, FMG Indianapolis, LLC d/b/a Reagan Outdoor Advertising has owned three billboards along State Road 37 in Noblesville. These billboards are classified as pole signs under Noblesville's unified development ordinance. The 1974 ordinance, which regulates the display of signs within the city, prohibits pole signs. Pre-existing pole signs, like Reagan's, retain their status as a legal nonconforming use. Nonconforming signs lose their legal status if they are relocated or fall into disrepair after six months. UDO § 11.B.3.C.1.

In April 2020, Reagan learned that a storm had damaged one of its billboards—two of its support posts were snapped, and two others were

splintered. Reagan acted promptly to repair the damage. It removed the billboard's front-facing display, cut off the existing posts at ground level, and installed new posts 18 to 36 inches behind the original posts.

Before Reagan could finish the repairs, the city's department of planning and development issued a stop-work order. It later issued a notice of violation, which explained (1) Reagan had not obtained a valid permit to install the sign and (2) Reagan's replacement of the failed posts with posts 18 to 36 inches away relocated the sign. Thus, the department concluded the sign lost its legal nonconforming status and ordered Reagan to remove it immediately.

B

Reagan appealed the stop-work order and notice of violation to the board of zoning appeals, which affirmed the department's rulings. Like the department, the board found that Reagan had relocated the sign, resulting in the loss of the sign's legal nonconforming status. The board also found that Reagan resorted to the "drastic actions" of self-help when it should have "[o]btain[ed] the required permit", "[r]eplac[ed] the damaged posts with a new post in the existing sign location", and "[l]e[ft] the sign in the existing sign location."

Reagan then sought judicial review of the board's decision under Indiana Code section 36-7-4-1615 and declaratory relief under sections 34-14-1-2 and 10. In an extensive order, the trial court found for Reagan. As to judicial review, the court held that Reagan did not need a permit under article 11 of the ordinance, which governs signs, to do necessary repairs. It also held that Reagan did not "relocate" its sign by installing the new posts a few feet from the old posts.

As to declaratory relief, the court held that Reagan could "place its [s]ign on the new, steel [s]upports without any challenge to its uninterrupted and ongoing legal non-conforming use status" under sections 36-7-4-1615(2) and 34-14-1-2. And the court awarded Reagan "an assessment of costs against the [board]" under section 34-14-1-10.

The board appealed the trial court's decision. It argued the disputed sign lost its legal nonconforming status because Reagan needed a permit

to install the new support posts and that, by installing the new posts in a different location, Reagan relocated the sign in violation of the ordinance. The court of appeals agreed and reversed. *Noblesville, Ind. Bd. of Zoning Appeals v. FMG Indianapolis, LLC*, 201 N.E.3d 1175 (Ind. Ct. App. 2022). It held the permit requirement was of "no independent practical effect", *id.* at 1181, and ultimately decided the trial court erred by failing to defer to the board's reasonable interpretation that Reagan's movement of the support posts relocated the sign under the ordinance. *Id.* at 1183. We granted transfer, 209 N.E.3d 1168 (Ind. 2023), thus vacating the appellate opinion, Ind. Appellate Rule 58(A).

## II

We hold it is unclear under the ordinance whether "relocate" encompasses the de minimis movement of a sign undertaken to repair the damaged support posts. Consistent with our interpretive canons, we resolve this ambiguity in Reagan's favor. Thus, the board's decision was contrary to law under Indiana code section 36-7-4-1614(d)(1), and Reagan is entitled to declaratory relief.

### A

#### 1

We begin with Reagan's request for judicial review of the zoning board's ruling. The board held that Reagan needed a permit to repair the support posts, and the board defended this determination before the trial court. The court did not address this argument expressly but implicitly rejected it by concluding that moving the posts was maintenance and did not require a permit. On appeal, the zoning board argues that Reagan's sign lost its legal nonconforming status because Reagan relocated it.

The board referenced Reagan's lack of a permit in its appellate papers but did not explain why Reagan needed a permit. The board simply insisted Reagan needed a permit to complete its work because Reagan was constructing a "new" sign, not "repairing" an old one. Such bare assertions without legal support or briefing are insufficient. Thus, we conclude the argument is waived and cannot serve as a basis for the board to obtain appellate relief. See *French v. State*, 778 N.E.2d 816, 826 (Ind.

2002) (holding that appellant waived an issue by not raising it in his principal brief). Due to waiver, we need not determine whether Reagan needed a permit to repair its support posts. Thus, the only argument before us is whether Reagan's decision to move the posts 18 to 36 inches from their original position "relocated" the sign in violation of the ordinance's ban on nonconforming signs.

2

Indiana courts treat zoning boards as administrative agencies when reviewing their decisions. *St. Charles Tower, Inc. v. Bd. of Zoning Appeals of Evansville-Vanderburgh Cnty.*, 873 N.E.2d 598, 600 (Ind. 2007). We review such agency decisions under three different standards. *Ind. Off. of Util. Consumer Couns. v. S. Ind. Gas & Elec. Co.*, 200 N.E.3d 915, 918 (Ind. 2023) (citation omitted). For questions of fact, we uphold agency findings that are supported by substantial evidence. *Ibid.* For mixed questions of law and fact, we review agency conclusions for their reasonableness. *Ibid.* And for questions of law, we decide independently whether the agency action is contrary to law, including whether the agency "stayed within its jurisdiction and conformed to the statutory standards and legal principles involved in producing its decision, ruling, or order." *Ibid.* (quoting *Ind. Off. of Util. Consumer Couns. v. Duke Energy Ind., LLC*, 183 N.E.3d 266, 268 (Ind. 2022)).

We interpret ordinances and statutes using the same methodology. *Siwinski v. Town of Ogden Dunes*, 949 N.E.2d 825, 828 (Ind. 2011) (citing *600 Land, Inc. v. Metro. Bd. of Zoning Appeals of Marion Cnty.*, 889 N.E.2d 305, 309 (Ind. 2008)). The interpretation of both is a question of law. *City of Bloomington Bd. of Zoning Appeals v. UJ-Eighty Corp.*, 163 N.E.3d 264, 267 (Ind. 2021) (quoting *Story Bed & Breakfast, LLP v. Brown Cnty. Area Plan Comm'n*, 819 N.E.2d 55, 65 (Ind. 2004)). We review such legal questions anew, giving the lower tribunal no deference. *Duke Energy*, 183 N.E.3d at 268. And when an agency's underlying factual findings are undisputed, courts accept them as true and turn to the legal question governing the case. *S. Ind. Gas & Elec. Co.*, 200 N.E.3d at 918.

Here, the underlying facts are undisputed. Thus, the lone question before us on judicial review is the legal consequence of undisputed facts—

whether, in other words, Reagan violated Noblesville's ordinance. We hold it did not. Although "relocate" and "move" are similar, they have different meanings under the ordinance. And the ordinance offers no guidance on how far a sign must be "moved" before it has been "relocated". Thus, the term is ambiguous, and we construe it in Reagan's favor.

3

The board argues we should follow the "instructive" reasoning of a 2006 court of appeals opinion, *Hoosier Outdoor Advertising Corporation v. RBL Management Incorporated,* and defer to its reasonable interpretation of the ordinance. *Hoosier Outdoor* held that when an agency interprets an ordinance it is tasked with enforcing, it is entitled to "great weight". *Hoosier Outdoor Advert. Corp. v. RBL Mgmt., Inc.*, 844 N.E.2d 157, 163 (Ind. Ct. App. 2006). The court of appeals below embraced this decision to assert that the board's reading of its own ordinance "was entitled to a presumption of correctness". *Noblesville,* 201 N.E.3d at 1183. But, unlike the court of appeals and the board, we do not consider *Hoosier Outdoor* "instructive". Under our standard of review, we do not defer to agency decisions on legal questions. Thus, we review the ordinance de novo.

Article 11 of the ordinance regulates signs within Noblesville. Under article 11, signs lose their legal nonconforming status if they are "relocated". UDO § 11.C.6. Article 11 does not define "relocate", but Article 2 explains that all undefined words in the ordinance "shall be defined according to any recent edition of Webster's New Collegiate Dictionary". UDO § 2.1.D. The parties agree that "relocate" means "to locate again, establish or lay out in a new place, or move to a new location." *Relocate*, Merriam-Webster-Online Dictionary, https://perma.cc/5ND9-JBWU (last visited Sept. 22, 2023).

Article 14 of the ordinance, which governs nonconforming structures generally, says that such structures lose their legal status if they are "moved"—also undefined—"for any reason for any distance whatever". UDO § 14.E.4. The parties did not stipulate to the meaning of "move". But the trial court defined it as "[t]o change position or posture; dislodge or displace from a fixed position." (Citing *Move,* Merriam-Webster-Online

Dictionary, https://perma.cc/W57M-ABC8 (last visited Sept. 22, 2023)). Neither party challenges this definition. Instead, the board argues that these terms—"relocate" and "move"—do not have different meanings because "relocat[e]" means "to **move** to a new location" (emphasis added). Thus, the board argues, Reagan "relocated" its sign by moving it to a new location 18 to 36 inches from the original position.

At first glance, this plain-meaning argument seems obvious and correct: "relocate" means "to move to a new location", and Reagan moved the posts to a different location, inches behind their original position. Thus, the argument goes, Reagan "relocated" its sign in violation of the ordinance and forfeited the sign's status as a legal nonconforming use. But on closer inspection, the ordinance itself suggests that "relocation" and "movement" have different meanings.

Article 11 says that nonconforming signs cannot be **relocated**; it does not say they cannot be **moved**. Though often synonyms, "relocate" and "move" do not mean the same thing here because the ordinance uses them differently. When the ordinance wants to prohibit movement of any kind, it says so in no uncertain terms: Article 14 bans the movement of nonconforming structures "for any reason for any distance whatever". UDO § 14.E.4. A prohibition on "movement", in other words, bans even the slightest movement. Had the board argued on appeal that Reagan's sign was an article 14 structure, Reagan's actions may well have violated the ordinance's ban on "movement" and caused the sign to lose its legal nonconforming status. But the board never did so, thus waiving any argument for reversing the trial court's judgment on this ground. *Isom v. State*, 170 N.E.3d 623, 639, 645 (Ind. 2021) (citing App. R. 46(A)(8)(a)) (concluding that failure to raise argument on appeal resulted in waiver).

If article 11 mirrored article 14's ban on "movement", or used such strict, uncompromising language to ban any "relocation" of a nonconforming sign "for any reason for any distance whatever", we might conclude that even Reagan's modest, 18-to-36-inches movement of its posts amounts to a "relocation". But article 11 does not prohibit the movement of posts in such unbending terms. Instead, it simply says that nonconforming signs may not be "relocated". UDO § 11.C.6. It is unclear

under the ordinance whether "relocation"—like "movement"—encompasses such modest movement. When we interpret ordinances, we presume the common council "deliberately used a different term ['relocate' versus 'move'] because it intended to communicate a different meaning." *In re Adoption of B.C.H.*, 22 N.E.3d 580, 585 (Ind. 2014) (citing *Merritt v. State*, 829 N.E.2d 472, 475 (Ind. 2005)). But concluding that "relocate" and "move" have different meanings does not clarify what result is dictated here.

An ordinance is ambiguous if it is "susceptible to more than one interpretation". *Anderson v. Gaudin*, 42 N.E.3d 82, 85 (Ind. 2015) (citations omitted). Was Reagan's "movement" of the posts 18 to 36 inches behind their original location enough to constitute a "relocation"? The ordinance does not say. It provides no guidance on this point—no yardstick for assessing when a difference in degree ("movement") becomes a difference in kind ("relocation"). The trial-court and zoning-board decisions show that this lack of guidance leaves the ordinance susceptible to competing interpretations of "relocate". Thus, "relocate" is an ambiguous term.

This ambiguity compels us to find for Reagan. Because zoning ordinances limit the free use of property and are in derogation of common law, we construe any such ambiguity to favor the free use of land. *Cracker Barrel Old Country Store, Inc. v. Town of Plainfield ex rel. Plainfield Plan. Comm'n*, 848 N.E.2d 285, 290 (Ind. Ct. App. 2006) (citing *Saurer v. Bd. of Zoning Appeals*, 629 N.E.2d 893, 898 (Ind. Ct. App. 1994)). Under this principle, ambiguous zoning ordinances are construed in favor of property owners. *Story Bed & Breakfast*, 819 N.E.2d at 66 (citing *T.W. Thom Constr. v. City of Jeffersonville*, 721 N.E.2d 319, 325 (Ind. Ct. App. 1999)) ("[A]s a general rule, zoning ordinances limit the free use of property, are in derogation of the common law and must be strictly construed. But this rule cannot override the specific language of an otherwise valid and unambiguous ordinance.") (citation omitted). Thus, because the ordinance's definition of "relocate" is ambiguous, the board erred by holding that Reagan relocated its sign.

Our review of the ordinance shows that the board's interpretation of "relocate" was contrary to law. Thus, we affirm the trial court's judgment reversing the board's decision. I.C. § 36-7-4-1614(d)(1).

B

In addition to reversing the zoning board's decision, the trial court also awarded declaratory relief and costs to Reagan: "Reagan may place its [s]ign on the new, steel [s]upports without any challenge to its uninterrupted and ongoing legal non-conforming use status pursuant to Ind. Code § 36-7-4-1615(2) and Ind. Code § 34-14-1-2". The court also concluded that Reagan was "entitled to an assessment of costs against the [zoning board] under Ind. Code § 34-14-1-10".

Under the declaratory judgment act, courts "have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." I.C. § 34-14-1-1. Any person "whose rights, status, or other legal relations are affected by a . . . municipal ordinance . . . may have determined any question of construction or validity arising under the . . . ordinance . . . and obtain a declaration of rights, status, or other legal relations thereunder." *Id.* § 34-14-1-2. Courts may also award costs. *Id.* § 34-14-1-10. Claims for declaratory relief may be brought alongside petitions for judicial review of zoning-board decisions. See *ResCare Health Servs., Inc. v. Indiana Fam. & Soc. Servs. Admin. - Off. of Medicaid Pol'y & Plan.*, 184 N.E.3d 1147, 1152 (Ind. 2022) (holding that petition for judicial review of an agency decision is akin to a complaint and allows parties to raise additional claims not available on administrative review, like declaratory relief).

The zoning board argues that the trial court's declaration of rights and award of costs was improper because the 1600 series within Indiana Code chapter 36-7-4 "establishes the exclusive means for judicial review of zoning decisions", I.C. § 36-7-4-1601(a), and does not specifically provide a mechanism for granting declaratory relief, *id.* § 36-7-4-1615. The board also argues that a court can award no further relief from a zoning-board decision under any other statute.

The zoning board is right that the 1600 series—titled "Judicial Review"—is the only vehicle for overturning a zoning board's decision and does not have a mechanism for declaring rights or awarding costs. But the 1600 series controls only judicial review of the zoning board's decision. And Reagan sought more than just retroactive relief on judicial review. It also sought prospective declaratory relief, including costs: "an order declaring the uninterrupted and ongoing non-conforming use status for the [s]ign as permitted by IC 34-14-1-2"; "an order declaring that Reagan may put its [s]ign back up on the newly erected [s]teel [s]upports as permitted by IC 34-14-1-2"; costs as may seem "equitable and just as permitted by IC 34-14-1-10"; and "all other appropriate relief."

These issues are different from the merits of the zoning board's decision and seek to preserve Reagan's legal rights after it obtained a favorable ruling on judicial review. The stop-work order was issued over three years ago and still bans Reagan from doing necessary maintenance on its sign. Because the appellate process has lasted longer than the ordinance's six-month deadline for completing required repairs, UDO § 11.B.3.C.1, Reagan needed to ensure the sign still retained its legal nonconforming status after the lawsuit ended. After the trial court's favorable ruling on judicial review, its award of declaratory relief preserves the sign's uninterrupted legal nonconforming status and allows Reagan to finish its repairs within the ordinance's six-month maintenance deadline once the stop-work order was set aside.

As a party with rights affected by an ordinance, Reagan could seek a declaration of its rights or status under the declaratory judgment act and recover its costs as warranted. Because Reagan established on judicial review that the zoning board's order was invalid, it was also entitled to the declaratory relief that the trial court granted it. Thus, we affirm the trial court's decision to grant Reagan declaratory relief and award costs.

\* \* \*

For these reasons, we affirm the trial court's judgment for Reagan on its claims for judicial review and declaratory relief.

Rush, C.J., Massa and Molter, JJ., concur.

Goff, J., concurs in the judgment with separate opinion.

ATTORNEYS FOR APPELLANT NOBLESVILLE, INDIANA BOARD OF ZONING APPEALS
Robert S. Schein
Jonathon B. Snider
Lindsay M. Bennett
Dinsmore & Shohl LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE FMG INDIANAPOLIS, LLC d/b/a REAGAN OUTDOOR ADVERTISING
Raegan M. Gibson
Mackenzie E. Skalski
Paganelli Law Group
Indianapolis, Indiana

**Goff, J., concurring in the judgment.**

I concur in the result. Under our precedent, we afford "great weight" to a zoning board's interpretation of the ordinances it enforces. *St. Charles Tower, Inc. v. Bd. of Zoning Appeals of Evansville-Vanderburgh Cnty.*, 873 N.E.2d 598, 603 (Ind. 2007) (quotation marks omitted). In the words of the Virginia Supreme Court, such deference appropriately leans on zoning agencies' "expertise in the relationship between particular textual language and a local government's overall zoning plan" to promote "consistent application" of local ordinances. *Lamar Co., LLC v. Bd. of Zoning Appeals*, 620 S.E.2d 753, 757 (Va. 2005). Here, however, Noblesville's interpretation of "relocated," to include re-erection of a damaged pole sign 18 to 36 inches from its original spot, is unreasonable—especially considering Reagan's duty to keep the sign in good repair. Noblesville's interpretation is therefore undeserving of deference. I otherwise agree with the majority's interpretation of the ordinance in Reagan's favor.